THE COUNTY OF HENDERSON *et al.* Appellees, *vs.* THE CHI-
CAGO, BURLINGTON AND QUINCY RAILROAD COMPANY,
Appellant.

*Opinion filed April 23, 1926.*

1. HIGHWAYS—*corporation carrying right of way across high-
way must furnish and maintain crossing.* An individual or corpo-
ration cutting through a highway for a right of way or other bene-
ficial purpose must, as a common law duty, furnish to the public a
proper crossing, even though acting under a license, unless relieved
of the duty by statute; and the obligation is continuing and in-
cludes the duty of maintaining the crossing.

2. RAILROADS—*when railroad must maintain highway bridge be-
yond right of way.* Where a highway, prior to the erection of a
railroad embankment, crossed a stream at a ford, and the railroad
company, to provide a grade crossing after the erection of the em-
bankment, constructed a bridge for the highway over the stream,
the company is obliged to maintain the bridge as an approach to
the grade crossing even though it is entirely outside the company's
right of way, where the bridge was not constructed because of the
increase of traffic on the highway and the inconvenience of the
ford but because of the obstruction of the highway by the embank-
ment, making it practically impossible to use the ford without car-
rying the highway through the embankment, which the company
deemed inadvisable because of diversion of the water of the stream.

3. SAME—*Commerce Commission has jurisdiction of approach
to grade crossing although beyond right of way.* Under section 58
of the Public Utilities act the Commerce Commission has jurisdic-
tion over railroad crossings of public highways, and the approaches
thereto, even though the approaches extend beyond the right of
way of the railroad.

4. SAME—*meaning of term "approaches," as applied to railroad
crossings.* The word "approaches," as applied to railroad cross-
ings, means embankments, bridges, grades and structures of any
sort on each side of the railroad at the crossing which serve as
the way for approaching the crossing.

5. PUBLIC UTILITIES—*circuit court cannot remand cause to the
Commerce Commission with directions to enter order.* The circuit
court, if it finds the decision of the Commerce Commission unlaw-
ful or unreasonable, may remand the cause for further proceedings
but cannot remand the cause with specific directions as to the order
that shall be made.

APPEAL from the Circuit Court of Henderson county; the Hon. GEORGE C. HILLYER, Judge, presiding.

J. A. CONNELL, and GRIER, SAFFORD & SOULE, for appellant.

HARRY E. BLACKSTONE, State's Attorney, and O'HARRA, O'HARRA & O'HARRA, for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The county of Henderson and the town of Biggsville, in that county, filed a petition with the Illinois Commerce Commission for an order requiring the Chicago, Burlington and Quincy Railroad Company to repair and maintain a bridge over a creek crossed by a public highway running north and south on the section line between sections 17 and 18. The commission, after a hearing, entered an order finding that the subject matter of the petition was one over which the commission had no jurisdiction, because the bridge was entirely outside of the railroad company's right of way, and for that reason the petition was dismissed. The petitioners appealed to the circuit court, which found that the commission had jurisdiction of the subject matter, and therefore set aside its order and remanded the cause to the commission. The railroad company appealed to this court, but by agreement of the parties the appeal was dismissed, and it was stipulated that there should be a rehearing of the petition before the commission but that no additional evidence should be heard. On the rehearing the commission found that the duty of reconstructing the bridge fell primarily upon the public authorities and ordered that the prayer of the petition be denied, except it should appear that the tracks or structures of the railroad company had added an additional cost to the reconstruction of the bridge; that the railroad company be ordered to contribute to the

320–39

public authorities the excess cost, if any, which the construction or reconstruction of the tracks or structures of the railroad company have added to the cost of reconstructing the bridge, and that the commission retain jurisdiction of the cause for the purpose of ascertaining the amount, if any, to be contributed by the respondent toward the reconstruction of the bridge in case the parties are unable to agree. The county and township filed a petition for rehearing, which was denied, and they appealed to the circuit court of Henderson county, which set aside the order of the Commerce Commission, remanded the cause to the commission, and ordered the clerk to transmit a certified copy of the order of the court to the commission, together with the record, at the expiration of sixty days, if no appeal should be taken. From this order the railroad company has appealed and the county and township have assigned cross-errors.

The petition alleged that the highway existed prior to the building of the railroad, but there is no evidence of that fact. The evidence shows that many years ago the railroad was in existence, having a single track running from east to west through sections 17 and 18. On the south side of the railroad was a creek running from east to west, and there was also a highway running from south to north on the section line between sections 17 and 18. The road, on reaching the creek, crossed it at a ford. After crossing the highway the creek turned northwest, crossing the right of way of the railroad company, going under the tracks, which were carried over the stream on a pile bridge. The stream continued northwest, then turned west and southwest, and again crossed the right of way, going under the tracks, which crossed the stream on another pile bridge. The highway, after crossing the ford on the section line, turned to the left, and leaving the section line ran down the north bank of the creek and crossed the right of way, going under the same pile bridge over the stream. On the north

side of the right of way the road turned back to the section line on the east and then continued north. The pile bridge was filled in and a solid embankment made by the railroad company in 1882. At the same time the railroad company changed the channel of the stream by cutting a new channel on the south side of the railroad, through which the creek ran without crossing the railroad. The road-bed was not raised and the railroad company graded the approach from the ford to the tracks, and the highway was changed so that it went from the ford straight over the railroad embankment on the section line instead of turning to the left, going under the railroad, and returning to the section line as before. In 1899 and 1900 the railroad embankment was raised five and a half or six feet and the track was moved to the north about ten feet. This elevation of the grade made a rise of 23 feet from the ford to the track, and was an obstruction which made necessary some provision for travel on the highway either over or under the railroad track. There was a conference between the commissioners of highways of Biggsville township and railroad officials as to the method of getting over or under the railroad when the grade was raised. There was some talk of an underground crossing by the railroad company. The underground passage would relieve the road from all danger of accidents, but with an underground crossing the water from the creek would flow through to the north side and run west and back through the road again, making another opening necessary. In the opinion of the engineers good engineering demanded that that should be avoided if it could be done. Throupe, the superintendent of the railroad, said that he would put in a bridge, and it was done. The bridge was one which had been previously in use by the railroad company. It was a combination span wood and steel bridge 100 feet long raised on abutments, with two approaches, making a total length of 136 feet. The bridge is 11 or 11½ feet above the bed of the stream, and

the top of the railroad track is 12 feet above the floor of the bridge. The north end of the bridge is 147 feet from the nearest rail, at right angles to the main track at the center of the highway. Some repairs have been made on the bridge by the railroad company and some new planks and beams put in. The public authorities have done no work and made no repairs. The bridge was not open to public travel at the time of the hearing because it was impassable and had been for about a year or a year and a half.

The commission made a finding that while there is evidence that prior to the raising of the grade the public crossed the creek in question by means of a ford, and that upon the raising of the grade of the railroad the company, under an agreement with the public officials, straightened the public highway and built the bridge at its own expense, yet it is not conceivable that with the development of the community and the increase of traffic on the highway, as shown by the evidence, the straightening of the highway and the building of the bridge would not have been found necessary whether the railroad was located in its present position or not. This is substantially a finding that the development of the community and the increase of traffic on the highway would have required the straightening of the highway and the building of the bridge without any regard to the location of the railroad where it is, and it is without any basis in the evidence. There is no testimony in regard to the development of the community or the increase of traffic on the highway. The evidence is that the road is one of the public highways of Henderson county; that it connects with the main road going west from Biggsville and with the road north of the railroad track. It is characterized by one of the witnesses as not really a main traveled road but a kind of secondary road from the north to the main traveled road. It will be a main traveled road when the hard road east and west is built. The road a half mile south of this bridge is one of the main roads of the

county. It runs through Henderson county from Monmouth to Burlington. It is the only State bond issue road running east and west through the county.

At common law it is well established that any person or corporation cutting through a highway for the benefit of such person or corporation must furnish to the public a proper crossing, even though acting under a license from the proper authorities, unless relieved from that necessity by statute. The obligation is a continuing one and includes the duty of maintaining the crossing, which may be enforced by a writ of *mandamus*. (*People* v. *Chicago and Alton Railroad Co.* 67 Ill. 118.) No statute is required to compel the restoration of a highway. (*People* v. *Fenton and Thomson Railroad Co.* 252 Ill. 372.) Recognizing its obligation under this rule, the appellant, when it obstructed the highway by filling in the trestle which enabled the highway to cross the railroad right of way, complied with its duty by furnishing a new highway and crossing by means of the fill and grade, by which the road was carried from the ford over the railroad embankment. The railroad company had thus performed its obligation to restore the highway so as not to impair its usefulness, in a manner satisfactory to the highway authorities. The use of the highway by the public on the new line was continued for seventeen or eighteen years without any objection, until in the enlargement and improvement of the railroad company's facilities it became necessary for it to lay an additional track and elevate the grade, when the highway was again obstructed, and the duty of the railroad company again arose to restore the highway which it had obstructed, in such a manner as not to impair its usefulness. After a conference with the highway commissioners, at which the advantages and disadvantages of a crossing under the track or a fill and a grade crossing were considered, the railroad company determined to erect the bridge with the approaches, make the fills and establish a grade crossing. This was done and

was a satisfactory performance of the duty of the railroad company to restore the highway to its uesfulness.

On whom, then, rested the duty of maintaining the bridge and keeping it in repair? No contract as to maintenance was made when the bridge was constructed. It was built because the railroad company having created a solid embankment five and a half or six feet high across the highway and having thus permanently obstructed the road, was under a legal obligation to furnish the public a safe and proper crossing. This duty was imposed by statute so far as all crossings, and all approaches thereto within the railroad company's right of way, were concerned, (Rev. Stat. 1874, sec. 8, p. 809,) and it did not depend upon any act or default of the corporation but was an absolute duty imposed by the legislature, in the exercise of the police power, for the public safety. The common law duty existed, independent of statute, whenever a corporation, in crossing a highway, obstructs it and destroys or injures its use, to restore the crossing so as not unnecessarily to impair its usefulness. This duty is not based upon the police power but upon the obligation of the person or corporation causing the obstruction to repair the damage. The elevation of the tracks made the grade from the bottom of the creek to the top of the rail 23½ feet, and the railroad company, through its superintendent, proposed that it would carry the road over the railroad and put in the bridge. While the bridge was outside of the right of way it was a part of the approach of the highway to the crossing and was regarded as essential to a safe and practicable crossing of the tracks. The railroad company having created the condition which made the bridge necessary by first obstructing the road so as to prevent a passage under the track and then raising the grade so as to prevent a passage over the tracks, became liable to furnish a suitable crossing. This liability required the construction of a crossing safe and suitable not merely at the railroad tracks themselves, but

with such necessary approaches as to restore the highway to a condition which would enable it to be used for public travel and would not materially interfere with its use. This required the construction of the bridge beyond the limits of the right of way,—at least the parties treated the situation as if it required such construction,—and the repair of the highway and its restoration to a condition suitable for the public use was effected in that way. This duty to furnish an adequate crossing was a continuing liability, which was not satisfied by the mere construction of the crossing and its approaches but required them to be maintained. The finding of the commission that the development of the country and the increase of traffic on the highway would have required the construction of the bridge without any reference to the location of the railroad, even if sustained by evidence, is beside the question. The bridge was not constructed because of the development of the country or the increase of traffic, but because of the obstruction of the highway by the railroad company. The duty of maintaining it arose at that time, and the subsequent development of the country and increase of traffic would not discharge it.

The appellant cites *People* v. *Illinois Central Railroad Co.* 235 Ill. 374, in support of the proposition that the railroad company cannot be required to maintain the bridge. In that case the railroad company had been required, by an ordinance of the city of Chicago, to elevate its tracks at Sixty-third street, in that city, and construct and pave a subway for the street under its tracks. This was done, and some years later, the pavement requiring repairs, the city demanded of the railroad company that it make them, and upon the company's refusal applied for a writ of *mandamus* to compel the company to make them. It was held that the company was under no obligation to keep the pavement of the subway and approaches in repair. There had been a complete separation of grades. The railroad com-

pany had constructed and paved the subway and approaches, and there was no contractual obligation to do more. There was no interference with or obstruction of the street by the company. The use of the street was what it would have been if there had been no railroad there, and there was no just reason why the railroad company should be charged with the cost of keeping it in repair. The case here was different. There were two ways of making the crossing: one by means of a subway, through which the highway would go under the railroad on the surface of the ground; the other by a grade crossing, reached by the construction of an approach. The first would require a bridge for the railroad over the highway; the second a bridge for the highway over the creek. The railroad company chose the latter method. Its continuing duty to furnish a suitable crossing could only be performed by keeping the bridge in repair, suitable and safe for use. Whether, if the railroad had not been there or if the road had gone under the railroad in a subway, the highway authority would now find, or before this time would have found, it necessary to bridge this creek is immaterial.

The appellant contends that the circuit court erred in holding that the Commerce Commission had jurisdiction of the subject matter of the petition. Section 58 of the Public Utilities act grants power to the commission to require the reconstruction, re-location or improvement of any crossing (including the necessary approaches thereto) of any railroad across any highway or public road when necessary to the safety of the public or of the employees or passengers of such railroad. This jurisdiction implies authority over not only the crossing and the approaches to the crossing within the limits of the right of way, but the approaches even though they extend beyond the right of way. The word "approaches," as applied to the subject matter of a railroad crossing, "means the embankments, or bridges, or grades, or structures of any sort, on each side of the rail-

road at the crossing, which serve as the passage or way for approaching the crossing." (*City of Bloomington* v. *Illinois Central Railroad Co.* 154 Ill. 539.)   The bridge was eleven feet above the stream.   As it was approached from the south an embankment was necessary to serve as an approach to the bridge.   The bridge was necessary to cross the stream and serve as an approach to the railroad crossing, and beyond the bridge the grade up to the railroad embankment was necessary to reach the crossing of the track, the bridge and its approaches all constituting together the approach to the crossing.

The appellees have assigned cross-errors on the failure of the circuit court to include in its order remanding the cause specific directions to the Commerce Commission as to the order it should make, or to include in the court's findings a finding that it was the duty of the railroad company to erect and maintain the bridge.   It was held in *People's Gas Light and Coke Co.* v. *City of Chicago,* 309 Ill. 40, that the circuit court has no authority to remand the cause to the commission except where it appears that the commission failed to receive evidence properly offered, and in that case the court shall remand the cause to the commission, with directions to receive the testimony so offered and rejected.   It is also said in the case cited, that if the court finds the commission's decision unlawful or unreasonable, it follows as a natural consequence that the case should be remanded to the commission for further proceedings.   The order of the circuit court was in accordance with the rule thus announced.

The order of the circuit court of Henderson county is affirmed.                                                   *Order affirmed.*