The Chicago and Northwestern Railway Company, Appellant, *vs.* The Illinois Commerce Commission, Appellee.

*Opinion filed October 22, 1927.*

1. Constitutional law—*constitution must be construed with reference to the police power.* The constitution supposes the pre-existence of the police power, and its construction must be with reference to that fact.

2. Public utilities—*railroad may be compelled to assist in re-location of highway crossing.* Under section 58 of the Public Utilities act, by virtue of the police power and by reason of the fact that a railroad company is a public utility deriving its franchise from the State, such company may be compelled to re-locate the crossing of a public highway and share the cost of such re-location where the Commerce Commission finds that such re-location is necessary in the interest of public safety.

3. Same—*order of commission will be sustained if supported by evidence.* An order or decision of the Commerce Commission is subject to review as to its reasonableness, and reviewing courts will examine the facts upon which the order is based and if there is substantial evidence to support the order it will be sustained.

4. Same—*rules of evidence apply to hearings before Commerce Commission.* Although the Commerce Commission is not a court, the same rules as to the admissibility of evidence as in a court should be observed in its hearings.

5. Same—*the Federal Transportation act does not affect State's police power to regulate highway crossing.* The provisions of the Federal Transportation act in regard to the issuance of securities by railroad companies engaged in interstate commerce cannot affect the police power of the State to regulate highway crossings in the interest of public safety and does not affect the jurisdiction of the State Commerce Commission in such cases, where there is no evidence of the financial condition of the company and where the order of the commission does not interfere with interstate commerce.

6. Evidence—*what is not proper subject for opinion evidence.* Questions which do not require special knowledge or skill but which are within the common knowledge of mankind are not proper subjects for expert or opinion testimony.

Appeal from the Circuit Court of Tazewell county; the Hon. Joseph E. Daily, Judge, presiding.

326—40

Nelson J. Wilcox, Nelson Trottman, and George C. Rider, for appellant.

Oscar E. Carlstrom, Attorney General, Albert D. Rodenberg, W. E. Trautmann, and B. L. Catron, for appellee.

Mr. Chief Justice Heard delivered the opinion of the court:

This is an appeal from an order of the circuit court of Tazewell county affirming an order of the Illinois Commerce Commission, based on a petition of the Department of Public Works and Buildings, for a re-location of Route 24 of the State highway system at a point where the highway crosses the tracks of appellant near Green Valley.

Route 24 runs in a general northerly direction from Springfield to Peoria. The construction of the pavement on this route has been completed with the exception of short distances each way from the proposed crossing in question. As at present located, this highway extends in a northwesterly direction from Green Valley and then turns west over appellant's tracks on an overhead wooden bridge. About 150 feet west of the bridge Route 24 makes a right-angle turn to the north and continues thence on a ten or twelve per cent grade northerly toward Pekin and Peoria. The existing east and west road has a sag in its grade line east of the present overhead bridge. The floor of the bridge is a convex curve, being higher in the middle than at either end, and the bridge is reached by an ascending grade from both directions. In its petition the highway authorities proposed to re-locate the route so that it would leave the existing east and west road at a point about 800 feet east of the overhead bridge; then extend on a descending grade somewhat less than five per cent diagonally in a northwesterly direction to the railroad at a point approximately

270 feet north of the bridge, at which point the railroad embankment is about eighteen or twenty feet high, there to pass under the railroad by a subway; thence continue practically level, curving to the north on a twenty-eight degree curve until it meets the existing north and south road west of the tracks at a point about 540 feet north of the east and west road, the maximum cut or fill of the re-located road not exceeding six feet. The commission entered an order granting the prayer of the petition, finding from the evidence that the proposed cut-off and subway are necessary to preserve and promote the safety of the public, and directed the railroad company at its own expense to install or cause to be installed the necessary false work to support its tracks and road-bed and its railroad traffic thereon at the proposed subway location, and to maintain the false work during such time as the construction of the proposed subway, and the highway leading to the same, should be in progress, the false work to be so installed as at a later date to permit of the construction of a permanent subway structure. The order further directed that the Department of Public Works and Buildings at its own expense should perform all necessary excavation and labor and furnish all materials necessary to construct the road through the subway opening, together with all necessary drainage openings.

It is first contended by appellant that the evidence fails to show any necessity for the re-location of the road. The right-angle turn on the present highway is made on a steep grade, with a fall of at least 30 feet within a distance of 338 feet from the bridge. The evidence shows that in the construction of the system of hard roads the State highway department, with a view of promoting the safety of the public, eliminates right-angle turns, substituting therefor curves, and builds its roads, wherever possible, with a grade not to exceed five per cent, although it sometimes, under extraordinary conditions, adopts a six per cent grade. While appellant argues that the right-angle turn would

cause motorists to slow up in making the turn and thus be conducive to their safety, the evidence clearly shows that this turn, situated as it is, is extremely dangerous, and that by reason of the fact that it is only 150 feet west of the bridge it could only be reduced to a curve of about thirty-eight per cent in approaching the bridge, and that this approach would have to be made on an embankment rising to a height of 20 feet and with at least a six per cent grade running from 1200 feet north of the bridge. The evidence clearly shows that the proposed location is very much safer than any possible adjustment which might be made with reference to the road passing over the present overhead bridge, and that the proposed subway is necessary for the safety of the public in traveling over that part of Route 24 which is here in question, and that the order was not unreasonable or arbitrary.

It is contended by appellant that the order infringes the constitutional rights of appellant, in that it assumes to shift to appellant part of the burden of a public improvement, and so is not within the scope of the police powers of the State. A railroad is a public utility deriving its franchise from the State, and by accepting the same agrees to submit to all burdens, conditions and regulations imposed by the State with reference to its tracks and their intersections with highways necessary to promote or secure the safety of the traveling public. Roads and bridges are not merely for local use but are for the use and accommodation of all citizens of the State. (*People* v. *Williamson County,* 286 Ill. 44.) · The constitution supposes the pre-existence of the police power, and its construction must be with reference to that fact. *City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264.

The proceeding in this case is had under section 58 of the Public Utilities act, which provides as follows: "The commission shall also have power by its order to require the reconstruction, alteration, re-location or improvement

of any crossing (including the necessary highway approaches thereto) of any railroad across any highway or public road, whether such crossing be at grade or by overhead structure or by subway, whenever the commission finds after a hearing that such reconstruction, alteration, re-location or improvement is necessary to preserve or promote the safety of the public or of the employees or passengers of such railroad. By its original order or supplemental orders in such case, the commission may direct such reconstruction, alteration, re-location or improvement to be made in such manner and upon such terms and conditions as may be reasonable and necessary and may apportion the cost of such reconstruction, alteration, re-location or improvement between the railroad company or companies and other public utilities affected, or between such company or companies and other public utilities and the State, county, municipality, or other public authority in interest. The cost to be so apportioned shall include the cost of changes or alterations in the equipment of other public utilities affected as well as the cost of the re-location, diversion or establishment of any public highway, made necessary by such reconstruction, alteration, re-location or improvement of said crossing."

Under this section a re-location can be ordered only when necessary to preserve or promote public safety. The statute is specific upon this point. The commission is not given the power arbitrarily to shift the financial burden of a highway re-location from the State to a railroad corporation. Nor could the legislature provide for such shifting of the burden. If this were attempted by statute or order of the commission it would constitute an invasion of the company's constitutional rights guaranteed under the fourteenth amendment to the United States constitution and under section 13 of article 2 of the Illinois constitution. The police power of the State is, however, in matters touching the public safety, a broad one, and, undoubtedly for

the promotion of public safety, railroad property may in a proper case be subjected to uncompensated obedience to police regulations (*Chicago and Northwestern Railway Co. v. City of Chicago,* 140 Ill. 309; *East Side Sanitary District* v. *Mobile and Ohio Railroad Co.* 279 id. 319;) and the railroad company compelled to re-locate its crossing of a highway and at its expense change from an overhead crossing to a subway when necessary to promote or preserve the public safety. The orders and decisions of the commission are subject to review as to the reasonableness of its conclusions. Reviewing courts will examine the facts upon which the order is based, and if there is substantial evidence to sustain the order the order will be sustained. (*Chicago Bus Co.* v. *Chicago Stage Co.* 287 Ill. 320.) In the instant case the commission found that it would be impracticable to construct Route 24 on the existing highway as it extends across appellant's railroad on the overhead bridge and that such location would be a source of danger to highway traffic in traveling over the same if so constructed, the danger being due principally to the sharp turn in the highway west of the overhead bridge and to the necessity for maintaining a steep approach grade on a sharp curve on a high embankment, and found that public convenience and necessity required the extension of the route underneath appellant's railroad track by means of a subway in the proposed location.

It is contended by appellant that it was error for the commission to allow a witness to testify to the rules and regulations of the highway department with reference to the per cent of grades, the rules being in writing. While the commission is not a court, the same rules as to the admissibility of evidence as in a court should be observed in its hearings. The testimony was incompetent, but as the rules of the commission neither proved nor tended to prove the vital question in issue the error in its admission was inconsequential.

Appellant complains that it was not allowed to cross-examine one of appellee's witnesses with reference to an exhibit attached to the petition which had not at that time been introduced in evidence and concerning which the witness had not been examined in chief. There was no error in this respect.

Complaint is made by appellant that it was limited in its cross-examination of some of appellee's witnesses. The questions to which objections were sustained were largely as to the opinion of the witnesses upon questions which did not require special knowledge or skill but were upon subjects which were within the common knowledge of mankind and therefore not proper subjects for expert or opinion testimony.

It is contended by appellant that the Illinois Commerce Commission was without jurisdiction to make the order appealed from, for the reason that the expense involved in this subway is a capital expense and in appellant's present financial condition it would have to be financed by the sale of bonds, and that under the United States Transportation act of 1920 the matter of railroad security issues is placed entirely in the control of the Interstate Commerce Commission. The section invoked by appellant is as follows: "From and after one hundred and twenty days after this section takes effect it shall be unlawful for any carrier to issue any share of capital stock or any bond or other evidence of interest in or indebtedness of the carrier (hereinafter in this section collectively termed 'securities') * * * unless and until, and then only to the extent that, upon application by the carrier, and after investigation by the commission of the purposes and uses of the proposed issue and the proceeds thereof, * * * the commission by order authorizes such issue or assumption." There is no competent evidence in the record showing that to meet the expenditure required in the re-location of the crossing appellant would be compelled to issue any capital stock, bonds

or any other evidence of interest in or indebtedness of the carrier. The only evidence on this subject is conclusions of one of appellant's officials, received in evidence subject to appellee's objection, to the effect that the proposed subway would involve a capital expenditure; that the market value of the stock of the company is below par, and that in his opinion in order to finance the payment of the company's share of the cost of the proposed subway it would be necessary for the company to sell bonds. He did not testify that it would be necessary for the company to issue bonds or whether the bonds to be sold were the company's bonds or other securities held by it in a sinking or other fund. No evidence was introduced showing the financial condition of the company, its earnings, the surplus funds in its treasury, if any, the amount of its then outstanding notes of a maturity of two years or less, the amount of the par value of its securities then outstanding, or that it was not in a position to meet this expense without resort to any of the stock or securities mentioned in this section of the Transportation act. Paragraph 9 of the section from which the above quotation is made, provides: "The foregoing provisions of this section shall not apply to notes to be issued by the carrier maturing in not more than two years after the date thereof and aggregating (together with all other than outstanding notes of a maturity of two years or less) not more than five percentum of the par value of the securities of the carrier then outstanding." The order in question does not in any manner tend to interfere with, hinder or delay appellant in the regular running of its trains in its interstate commerce. To engage in interstate commerce the railroad must go on the land, and the authority of the railroad to project its trains across thoroughfares must be taken to be subject to the implied limitation that it is subject to such limitations as may be imposed upon it by the State which are necessary for the safety of its citizens. (*Erie Railroad Co.* v. *Public Utility Comrs.* 65 U. S.

(L. ed.) 322.) The State has some sovereign rights. It has the "unquestioned police power to regulate grade crossings in the interest of public safety." (*Railroad Com.* v. *Southern Pacific Co.* 68 U. S. (L. ed.) 712.) The commission had jurisdiction to enter the order.

We do not deem it necessary to discuss the question of the apportionment of the expenses involved in the relocation, further than to say that a careful study of the estimates made by the various engineers shows that the adjustment made by the commission was entirely equitable.

Finding no reversible error in the record, the order entered by the circuit court is affirmed.

*Order affirmed.*