(No. 20073.—

WHITE COUNTY *et al.* Appellees, *vs.* THE LOUISVILLE AND
NASHVILLE RAILROAD COMPANY, Appellant.

*Opinion filed June 20, 1930.*

CHARLES P. HAMILL, for appellant.

CONGER & ELLIOTT, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

During July, 1928, the county superintendent of high-
ways of White county, Illinois, filed a petition with the
Illinois Commerce Commission for an order requiring the
Louisville and Nashville Railroad Company to construct
and maintain a bridge over a creek where the public high-
way in Hawthorne township, in that county, crosses the
creek on the railroad company's right of way a short dis-

tance south of where the highway passes under the company's trestle No. 118. A hearing was had before the commission, and on May 9, 1929, an order was entered requiring the railroad company to place the highway bridge or culvert in serviceable condition. The railroad company filed a petition for rehearing, which was denied, and an appeal was taken to the circuit court of White county, where the order of the commission was affirmed. From this order the company has perfected an appeal to this court.

Most of the facts are not in dispute and as disclosed from the record and the findings of the commission are as follows: The public highway is an improved gravel road used by persons residing in several townships in going to and from Carmi, the county seat of and an important trading point in White county, Illinois. The railroad now crosses over the highway about a mile from Carmi. About 1870 the railroad was built through White county, and in crossing the creek at the place here involved a trestle 123 feet in length was constructed. Prior to that time the highway extended in a westerly direction and passed over the property where the railroad right of way and tracks now are, at a point about 400 or 500 feet west of the present railroad trestle. The railroad tracks (or grade) at that point were then, and now are, only two or three feet higher than the surrounding ground level. About the time the railroad grade and trestle were constructed the highway was diverted under the trestle. There is no record of what arrangement or agreement, if any, was made at that time relative to the change of the public road or upon whose authority the relocation was made. The railroad tracks and right of way in this vicinity extend slightly north of west, and the highway under-crossing is practically north and south upon the right of way and is approximately level. After passing under the trestle in a northerly direction the highway turns northwesterly for a short distance and occupies a part of the company's right of way on the north side of the railroad.

The span of the trestle through which the highway passes is eighteen feet in width and the vertical clearance is a little over twelve feet. There is an ascending grade of about three per cent in the public road as it extends away from the under-crossing in either direction. Just east of the highway under-crossing a creek coming from a northeasterly direction flows south underneath the trestle and turns westerly within the railroad right of way. A short distance from this turn to the west the creek is crossed by the public highway. The channel of the creek is four or five feet deep, fifteen to twenty feet wide, and a bridge or culvert having a capacity of about forty sectional feet would be sufficient to carry away all the drainage water where the public highway crosses over it. The course of the creek was not changed by the construction of the railroad and its construction caused no material change in the amount of water flowing through the creek channel at the point where the trestle was built. The stream drains a very small territory on the north side of the railroad right of way and is not ordinarily subject to overflow except in times of very high water in the Little Wabash river, when the water backs up the creek to a depth of six or eight feet underneath the railroad trestle. This condition, when it occurs, lasts only a few days. At the time of the hearing before the commission there was a temporary wooden bridge used to cross over the creek. Under the bridge was a concrete culvert which had been partly washed out, and on account of its damaged condition from high water and use, poles and planks had been placed across it to permit crossing over the stream. There are no records showing that the railroad company has ever constructed or maintained a culvert or bridge across the creek at this point. There was evidence presented by several railroad employees or officials stating that the company had had nothing to do with the repair or maintenance of a bridge at this point from the year 1876 to the present time. The commission also stated in its finding

that there was no record of any township authorities ever having spent any money to maintain this bridge or culvert until the year 1913, at which time the township highway commissioner replaced an existing wooden culvert with the concrete culvert which is now in such bad state of repair. There was further evidence presented to the commission that an old wooden highway bridge had existed across the same creek a short distance west of the present crossing; that this bridge was located on the south side of the railroad right of way, and that the remains of the bridge are situated in line with the previous westerly direction of the old highway. However, there was no proof available as to who had constructed this old highway bridge.

The contention of appellant is that the commission was without legal authority to order the construction of the highway bridge and that the order was not justified under the police power. Appellees' position is that the right here sought to be enforced is contractual, arising out of the common law obligation of a railroad company to restore a highway to its former condition of usefulness, and that its duty in this respect is a continuing one when the duty of maintenance arises out of some act of its own.

The commission in its decision evidently relied upon *Henderson County* v. *Chicago, Burlington and Quincy Railroad Co.* 320 Ill. 608, and section 8 of the act in relation to fencing and operating railroads, (Smith's Stat. 1929, p. 2299,) as both are cited in its findings and conclusions. In the *Henderson County case* the railroad was constructed across a public highway. The highway originally passed through a near by stream by ford before crossing the railroad right of way, and continued to do this for many years until the railroad company raised its embankment a second time to such an extent that a bridge was made necessary over the stream to afford a reasonable grade and a safe approach to the grade crossing as established and desired by the railroad company. The company constructed the

bridge, which was outside its right of way, and later refused to repair or maintain it. A proceeding to compel such maintenance was instituted before the Commerce Commission and was finally brought to this court. In the opinion in that case this court said: "At common law it is well established that any person or corporation cutting through a highway for the benefit of such person or corporation must furnish to the public a proper crossing, even though acting under a license from the proper authorities, unless relieved from that necessity by statute. The obligation is a continuing one and includes the duty of maintaining the crossing, which may be enforced by a writ of *mandamus*. (*People* v. *Chicago and Alton Railroad Co.* 67 Ill. 118.) No statute is required to compel the restoration of a highway. (*People* v. *Fenton and Thomson Railroad Co.* 252 Ill. 372.) Recognizing its obligation under this rule, the appellant, when it obstructed the highway by filling in the trestle which enabled the highway to cross the railroad right of way, complied with its duty by furnishing a new highway and crossing by means of the fill and grade, by which the road was carried from the ford over the railroad embankment. The railroad company had thus performed its obligation to restore the highway so as not to impair its usefulness, in a manner satisfactory to the highway authorities. The use of the highway by the public on the new line was continued for seventeen or eighteen years without any objection, until in the enlargement and improvement of the railroad company's facilities it became necessary for it to lay an additional track and elevate the grade, when the highway was again obstructed, and the duty of the railroad company again arose to restore the highway which it had obstructed, in such a manner as not to impair its usefulness. After a conference with the highway commissioners, at which the advantages and disadvantages of a crossing under the track or a fill and a grade crossing were considered, the railroad company determined to erect the bridge with the approaches, make

the fills and establish a grade crossing. This was done and was a satisfactory performance of the duty of the railroad company to restore the highway to its usefulness. * * * The railroad company having created the condition which made the bridge necessary by first obstructing the road so as to prevent a passage under the tracks and then raising the grade so as to prevent a passage over the tracks, became liable to furnish a suitable crossing. This liability required the construction of a crossing safe and suitable not merely at the railroad tracks themselves, but with such necessary approaches as to restore the highway to a condition which would enable it to be used for public travel and would not materially interfere with its use. This required the construction of the bridge beyond the limits of the right of way,—at least the parties treated the situation as if it required such construction,—and the repair of the highway and its restoration to a condition suitable for the public use was effected in that way. This duty to furnish an adequate crossing was a continuing liability, which was not satisfied by the mere construction of the crossing and its approaches but required them to be maintained."

If the legal principles announced in the case cited are applicable here then the contention of appellees would be correct. It is apparent that the facts in that case are not like those presented by this record. Here the construction of the railroad trestle and embankment had no material effect upon the volume of water flowing in the creek channel and the course of the stream was not changed in any way. No authority of record, or arrangement between the company and the officials having supervision and control of public highways, could be found relative to the diversion of the public road under the railroad trestle. It was done about 1870 and the road has continued to be used for about sixty years. During that time, or at least since 1876, no work has been done by the railroad company on the culvert or highway bridge over the creek at this point but some

supervision and jurisdiction thereof have been taken by the township officials, because a concrete culvert was constructed there by the highway commissioner in 1913. It cannot be said from this record that the railroad company created conditions or changed the physical surroundings whereby it became necessary to change the location of the public road and to construct a bridge across the creek channel for such highway. Whatever the necessity may have been for a highway bridge across this creek, it was not due to the construction of or changes caused by the railroad. A substantial and adequate bridge or culvert over this creek channel is no doubt an essential part of the highway, particularly under present methods of transportation, but if the railroad were not in its present location a highway bridge would continue to be equally necessary for the convenient and satisfactory use of the road by the public. In our opinion a railroad company owes no duty of building or keeping in repair a road or bridge on its right of way unless such is rendered necessary by the construction of the railroad.

Appellant cites *People* v. *Illinois Central Railroad Co.* 235 Ill. 374, in support of the contention that the railroad company cannot be required to maintain the highway bridge. In that case the railroad company had been required, under a Chicago city ordinance, to elevate its tracks over a city street and to build and pave a subway under its tracks for the street. The railroad company made the improvement and some years later the city demanded that the company make needed repairs to the subway pavement. This it refused to do, and a writ of *mandamus* was applied for to compel the railroad company to make the repairs. In that case this court approved the language used in an earlier decision relative to the objects and purposes of section 8 of the act of 1874 in relation to fencing and operating railroads. (Smith's Stat. 1929, p. 2299.) The court said: " 'Safety of persons and property is the object of the requirement. The grading of the approaches and the planking

between the rails and tracks make it possible for men and teams to cross easily and quickly and thus avoid collision with passing trains, thereby insuring their own safety and the safety of the persons and property upon the train.' Here the street in question did not cross the railroad tracks but passed under them. Appellee is required to maintain its structures supporting the tracks in such condition as to render it safe for persons and property passing underneath them, but nothing it could do in the way of maintaining and re-paving the streets would afford any protection from trains to persons or property passing underneath its tracks. It is not denied that when the appellee elevated its tracks it restored the streets and sidewalks to proper condition, and in our opinion its duty ended there. The future maintenance of the streets was not imposed upon the corporation by its charter nor by any law passed in the exercise of the police powers of the State. In *Ruhstrat* v. *People,* 185 Ill. 133, it was said the police power is limited to the enactment of laws demanded for the public health, comfort, safety or welfare of society."

The facts in the case cited are somewhat different from those in this case yet the principle involved is quite similar. Apparently there is no record or satisfactory evidence as to who constructed the first culvert or bridge over the creek after the road was changed to go under the railroad trestle. The proof presented by the railroad officials shows no construction or maintenance by the company of a bridge over the creek from 1876 to the present time. If the railroad grade and trestle were built in 1870 it is possible that a bridge or culvert over the diverted highway may have been installed at the creek channel between 1870 and 1876. If one was constructed during that time the highway was evidently placed in as good condition for travel as it was before, or at least it must have been satisfactory to the highway officials and the public. There was a separation of grades accomplished at the time, and the presence of the

railroad and the operation of its business did not necessarily affect the safety of the public so long as the railroad trestle was in proper condition to support its tracks and the trains passing over them.

The control of railroad crossings has been by law conferred upon the Commerce Commission as successor to the Public Utilities Commission. The Public Utilities act was passed by the General Assembly in its exercise of the police power. This power is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people. (*Commerce Com.* v. *Omphghent Township,* 326 Ill. 65.) Section 58 of the Public Utilities act (Smith's Stat. 1929, p. 2253,) grants power to the commission to require the re-construction, alteration, re-location or improvement of any crossing (including the necessary highway approaches thereto) of any railroad over any highway or public road, whether such crossing be at grade or by overhead structure or by subway, whenever the commission finds, after a hearing, that such improvement is necessary for the safety of the public or of the employees or passengers of such railroad. Under this section of the statute the improvement desired can be ordered only when necessary to preserve or promote public safety. (*Chicago and Northwestern Railway Co.* v. *Commerce Com.* 326 Ill. 625.) The re-location of the highway under the railroad company's trestle removed the danger to the public in so far as the operation of the company's trains were concerned, and the use of the road was not impaired by anything which the railroad company did.

As we view this record, the Commerce Commission was not authorized to enter its order against the appellant relative to the construction and maintenance by it of the culvert or bridge across the creek channel on the public highway. The order of the Commerce Commission and the judgment of the circuit court are therefore reversed.

*Judgment reversed.*