Hart, J.
The defendant’s assignments of error in this court may be stated as follows:
(1) The evidence fails to disclose any negligence on the part of the defendant proximately contributing to plaintiff’s injury; (2) the evidence is insufficient as a matter of law to support an inference that the defendant failed to exercise ordinary care in providing plaintiff a reasonably safe place of employment; and (3) error in the charge of the court.
The first two assignments of error in this case, taken as a whole, are, in effect, a demurrer to the evidence. The question then before this court is whether the Court of Appeals was warranted in affirming the judgment of the trial court, assuming, as the Court of Appeals had a right to assume, the truth of all facts which were supported by credible evidence and of inferences which may be logically drawn therefrom.
The defendant claims that the evidence fails to disclose any negligence upon its part proximately contributing to plaintiff’s injury.
The record discloses that before plaintiff brought his action against the defendant he sued the biscuit company. In that suit he stated in his petition that his injuries took place in the yard of the biscuit company; that the “conveyer system * * * was owned by the defendant, was completely in the possession, and under the control, of the” biscuit company; and that the biscuit company was negligent and careless in permitting the bags to travel through its conveyer system and injure him. That suit was settled before the trial of the present action, the plaintiff reserving his right to prosecute this action against the defendant.
The evidence discloses that the employment of plain *51 tiff in spotting cars at the plant of the biscuit company was to signal the engineer moving the cars to be spotted to stop each car at a point where the door of the car would be opposite the spout of one of the chutes. The loading of the cars by use of the conveyer system and the placing of the bags in the car were done exclusively by the employees of the biscuit company.
The record discloses further that the defendant spotted and moved out of the biscuit company’s plant about 8,000 box cars per year; that on numerous occasions within 15 years before the injury to plaintiff, bags of flour and feed accidentally fell through these chutes, and on one occasion 40 sacks of flour so escaped through a chute; that these stray bags came through the chute by reason of the starting of the conveyer belt by some employee of the biscuit company; that there was no evidence that the falling of these stray bags through the chutes came directly to the attention of the defendant but that its general yard master walked through the switching yards at the biscuit company plant at least once each week and knew that the chutes did not have guards or safety devices; that he had seen carloadings made through the chutes located so they could operate through the side doors of box cars; that there was no evidence that the defendant made any inspection of the premises or conferred with the biscuit company about the matter of the operation of these chutes, although it would have been privileged to do so at any time; and that the defendant had full access to the yards and could have made the same inspection as though they were railroad property.
One of the chief items of evidence bearing upon the negligent construction and operation of the conveyer system was the testimony of two structural engineers called by the plaintiff. One of these engineers, after testifying that he had made an inspection of the con *52 veyer system of the biscuit company and had witnessed its operation, was permitted, as an expert witness, to give over objection certain opinions regarding the conveyer system. During the course of his examination he was interrogated and answered as follows:
“Q. The question is, what is your opinion as to the construction and design of such conveyer system with the opening spouts in it without the iron rod and bar across the opening of the spout? Do you understand the question? A. Yes.
6 6 it it
í 4 * * * a.. My opinion is that the design of that conveyer without the design of the chutes, without the bar in it is continually hazardous, which is evidenced by the addition of the bar by some engineer at a later date. * * *
6 6 * * #
“Q. What would you say, then, as to the proper construction, as to whether construction was proper in a conveyer system which did not have any guards on the open face of discharge spouts? A. My opinion is that it provides a possible hazard at any time.
“Q. Will you tell the jury what that hazard is? A. The hazard being when one of these bags, if it should pass all deflectors and come off of the end of the conveyer; unless it gets far enough it has to be discharged from either one of those spouts and the bag will be coming out of that chute unless there is some sort of means of stopping it when it comes down to the mouth so that it does not fall from the spout.
i 6 # # *
“Q. Can you tell us * * * whether the proper construction of a conveyer system with open discharge spouts in it, requires a guard of some kind to be placed on those open spouts? A. I would say that a conveyer with an open spout, such as this, which is up in the air nine feet or so from the ground, very definitely *53 is a probable hazard, and, therefore, should be designed with some sort of protective measure, some sort of a guard or something which would stop a bag of flour should it come to any one of the mouths of the discharge chutes where it is not desirable to have it discharge at that time.
6 ( * # #
“Q. Can you tell us what is the minimum, the least requirement of safety, in connection with open discharge spouts on such a conveyer system? A. Where the mouth is open, where it does not discharge into the conveyer, let’s say, which would stop the bag, the minimum amount of safety device is something that would stop that bag, and I am of the opinion that the rod, in there at the present time, is about the minimum that would stop a bag of flour when it would come down that chute. * * * ”
On cross-examination the witness testified as follows :
“Q. * * * Now, you wouldn’t, as an expert on the subject of those things that I have mentioned, the operation of them, expect the Wheeling & Lake Erie Railway Company — which owned none of the stuff, had none of the stuff under its control- — -to make any major changes in any of those things, now would you, or wouldn’t you? A. I would expect the Wheeling & Lake Erie Railroad Company to make changes. From my past experience with other railroads, if there was a flagrant, wrong conception on the part of that conveyer * *
The competency of the evidence of this engineer was challenged by objection on behalf of the defendant because the witness was permitted to express an opinipn on the ultimate issuable fact. This testimony was probably incompetent and prejudicial, but no question regarding it was properly saved. The rule is that if the subject of inquiry is one of common knowledge, as *54 to which there may he an intelligent portrayal of the facts to the jury and concerning which the members of the jury can form a reasonable opinion for themselves, an opinion of an expert on the ultimate fact to be determined is inadmissible as invading the province of the jury. Chicago & Northwestern Ry. Co. v. Illinois Commerce Comm., 326 Ill., 625, 158 N. E., 376, 55 A. L. R., 654; Inland & Seaboard Coasting Co. v. Tolson, 139 U. S., 551, 35 L. Ed., 270, 11 S. Ct., 653; Pratt v. North German Lloyd Steamship Co., 184 F., 303; Keefe v. Armour & Co., 258 Ill., 28, 101 N. E., 252, Ann. Cas., 1914B, 188.
In its motion for new trial, defendant set out as one of the grounds of such motion the. claim that “the court erred in admitting incompetent evidence offered by the plaintiff over the objection of the defendant,” and in its appeal to the Court of Appeals this claimed error was assigned. The Court of Appeals considered this evidence as bearing upon the negligence of the defendant and affirmed the judgment. It will be observed that this ground of error was not included in defendant’s assignments of error in this court but was argued in its brief. Under these circumstances this court can not consider this ground of error.
The question arises whether, in consideration of all the testimony, in substance above recited, there was sufficient evidence to carry the case to the jury on the question of whether the defendant failed to exercise reasonable diligence to provide plaintiff a safe place of employment.
It is conceded that at the time plaintiff was injured the defendant was engaged in interstate commerce and that this action is governed by the Federal Employers ’ Liability Act, Section 51 of which provides as follows:
“Every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering in *55 jury -while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.”
Although the act does not make a railroad company an absolute insurer against personal injury damages suffered by its employees, the railroad is liable for its negligence; the issue of negligence is one for the jury to determine according to its finding of whether the railroad’s conduct measured up to what a reasonable and prudent person would have done under the same circumstances; and a jury is justified in holding the railroad liable for injuries attributable to conditions under its control where they were not such as a reasonable person would have maintained under the circumstances, bearing in mind that the standard of care must be commensurate to the dangers of the business. Wilherson v. McCarthy et al., Trustees, 336 U. S., 53, 93 L. Ed., 497, 69 S. Ct., 413, citing Tiller, Exr., v. Atlantic Coast Line Rd. Co., 318 U. S., 54, 67, 87 L. Ed., 610, 617, 63 S. Ct., 444, 451, 143 A. L. R., 967.
Under that act, negligent conduct must be determined by common-law principles as enunciated and applied by the federal courts. Urie v. Thompson, Trustee, 337 U. S., 163, 93 L. Ed., 1282, 69 S. Ct., 1018, 11 A. L. R. (2d), 252. The act establishes the duty of an employer to use reasonable care to furnish his employees a safe place to work. 56 Corpus Juris Secundum, 947, Section 226. In this connection, the court in Anderson, Admx., v. Atchison, Topeka & Santa Fe Ry. Co., 333 U. S., 821, 92 L. Ed., 1108, 68 S. Ct., 854, said that under the Federal Employers’ Liability Act, the employer is bound to do what a reasonably prudent man would ordinarily do under the circumstances.
*56 The test of “foreseeable danger” is applied. Lillie v. Thompson, Trustee, 332 U. S., 459, 92 L. Ed., 73, 68 S. Ct., 140. And the employer’s statutory duty to furnish a safe place to work applies where the servant is obliged to go upon the premises of another so long as the employer-employee relationship continues. 56 Corpus Juris Secundum,. 919, Section 212.
In the case of Terminal R. Assn. of St. Louis v. Fitzjohn, 165 F. (2d), 473,1 A. L. R. (2d), 290, the plaintiff was injured while engaged in switching cars at an ordinance plant of the United States. The defendant railroad company claimed the plaintiff was a “lent servant” to the United States and was employed upon its premises at the time of his injury, and that the defendant was absolved from liability for their unsafe condition. The court in stating the rule under such circumstances said:
“Since plaintiff was an employee of defendant at the time of his injury, the fact that the premises where plaintiff was sent to work did not belong to and were not under the control of defendant did not absolve defendant from liability for their unsafe condition.”
In Albert Miller & Co. v. Wilkins, 209 F., 582, 584, the court stated the rule in the following language : “That a master is bound to use reasonable care to provide a safe place in which his servant may work is now too well established to require citation of authority, and it can make no difference, so far as the servant is concerned, whether the master is using his own property or that of another. ’ ’ See, also, Ellis v. Union Pacific Rd. Co., 329 U. S., 649, 91 L. Ed., 572, 67 S. Ct., 598; Southern Ry. v. Hobbs, 35 F. (2d), 298; Guarrino v. Union Dock Co., 1 Ohio App., 9, affirmed, without opinion, 91 Ohio St., 442, 110 N. E., 1070.
Since the evidence in the instant case discloses that a potential danger existed at a point where plaintiff was obliged to work, and that such danger was appar *57 ent upon inspection, although there was no evidence that an inspection of the premises had been made, the trial court was justified in submitting the issues to the jury.
However, the defendant claims prejudicial error in the court’s general charge to the jury. In a part of the charge the court said:
‘ ‘ The court charges you as a matter of law that defendant had a right to presume that the National Milling Company [sic] would exercise ordinary care and not be negligent in the construction and operation of its carrier system.”
The defendant suggests that in this part of the charge there is a strong inference that the National Biscuit Company, although not a party to this action, was negligent in the construction and operation of its conveyer system.
Again, the court charged as follows:
“One question of fact for your determination in arriving at the ultimate fact for your determination is whether or not the conveyer system of the National Biscuit Company was defective in construction, with unguarded, open spouts.”
The defendant claims that under this instruction, if the jury found that in August 1945 these spouts were open spouts, it must necessarily find that they were defectively constructed. That part of the charge relates to a matter collateral to the main issue and should have been omitted.
In the course of the charge the court further instructed the jury as follows:
“* * * ordinary care in this case would be such care as those persons who are engaged in the business of operating conveyer systems for this or similar purposes are accustomed to exercise in the use and operation of such machinery. Defective machinery is the gist or basis of this charge. ’ ’
*58 This portion of the charge is entirely foreign to the issues which the court submitted to the jury and should not have been given. Negligence on the part of the biscuit company in the operation of its conveyer system was not an issue. Only the presence of the chutes of the system in their then condition and their mode of operation at the point where cars of the defendant were loaded, as related to the question of whether the defendant furnished plaintiff a reasonably safe place to work, were for the consideration of the jury. The instruction of the court could well have led the jury to infer that the defendant stood in the position of the biscuit company and that it was directly liable for any negligence in the construction or operation of the conveyer system. The primary issue was, did the defendant provide plaintiff a reasonably safe place of employment, and the court erred in saying, ‘ ‘ defective machinery is the gist or basis of this charge.”
We are of the view that the cumulative effect of these charges was prejudicial to the defendant.
The judgment of the Court of Appeals is, therefore, reversed and the cause is remanded to the Common Pleas Court for a new trial.

Judgment reversed.

Weygandt, C. J., Taft, Matthias, Zimmerman and Stewart, JJ., concur.
Middleton, J., not participating.