MARATHON OIL COMPANY, Plaintiff-Appellant, *v.* THE ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

Fifth District   No. 76-287

Opinion filed August 12, 1977.—Rehearing denied September 30, 1977.

CARTER, P. J., dissenting.

Randall Robertson, of Lueders, Robertson & Konzen, of Granite City, John P. Meyer, of Danville, and C. Richard Turnbow, Legal Counsel for Marathon Oil Company, of Robinson, for appellant.

William J. Scott, Attorney General, of Chicago, and Frank M. Pfeifer, of Springfield (Hercules F. Bolos, Rodney C. Howard, and Mary C. Ubatuba, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal by Marathon Oil Company from a decision of the circuit court of Crawford County which affirmed a decision of the Illinois Commerce Commission granting a rate increase for natural gas service on an application filed by Gas Utilities Company.

Respondent Gas Utilities Company is an Illinois corporation providing gas service to the public in the city of Robinson and the surrounding area in Crawford County. Petitioner operates an oil refinery in Robinson and is easily the largest consuming customer of Gas Utilities Company. Gas Utilities Company purchases its supplies of natural gas from Texas Gas Transmission Company, an interstate gas transmission company. Marathon is served directly off the pipeline of Texas Gas Transmission and service to Marathon requires none of the other common facilities of Gas Utilities Company which are used to service the rest of its customers. Texas Gas Transmission, however, bills Gas Utilities for the gas delivered to Marathon and Gas Utilities Company, in turn, bills Marathon. J. M. Imlay, president of Gas Utilities Company, testified that his company has only $9,370 invested in plant which is directly assignable to Marathon. Such investment consists of a calorimeter and an air conditioner. All the other plant and equipment necessary to serve Marathon is supplied by Texas Transmission, including the supply main and the meters which measure the quantity of gas delivered.

On November 21, 1973, Gas Utilities Company filed proceedings before the Illinois Commerce Commission seeking a rate increase, applicable only to Marathon Oil Company, for supplying natural gas. The then existing rate for Marathon had been established in 1969. Rates for all other customers of Gas Utilities Company had been established in 1958. Marathon filed a petition for leave to intervene in the proceedings, I.C.C. Docket Number 58730, and participated in the hearing and cross-examination of Utilities' witnesses. It presented its own exhibits, expert testimony, briefs and oral argument.

At the hearing respondent Gas Utilities contended that Marathon does not pay a reasonable proportion of total company expenses, resulting in an operating loss of $12,529 from sales of gas to Marathon. It claimed that its return of 1.4% on its base rate was derived from service to customers other than Marathon, that Marathon is a part of the entire system and should be charged a rate which will produce a reasonable return on the plant plus a fair share of the total operating system. It was further claimed that a proposed rate increase of 12.6% for Marathon would increase Marathon's share of total operating revenues from 48.4% to 51.8% while Marathon continues to use 56% of the total gas sold and thereby enable Gas Utilities to earn a return of 6.5% on the net cost of its plant.

Marathon argued that only $16,053 is the value of the utilities property used in serving Marathon and that the present rate applicable produces a return to the utility of 131% of the property utilized in service to Marathon. Marathon further argued that cost of service to it is the single most important factor and therefore should be given the most weight.

After denying Marathon's motion to dismiss Utilities' application the Commission entered its order on October 16, 1974, granting a rate increase that provided Utilities with a rate of return of 7.7% on its original rate base of $1,333,447. The evidence shows that $16,053 of this rate base is allocable to Marathon. To produce this return, the Commission designated a rate schedule for large volume industrial gas service that allowed a mark-up of 8% of the sum of the demand, commodity and gross receipts charges. The demand charge is the cost to Gas Utilities Company of gas actually delivered to Marathon by Texas Gas Transmission, the commodity charge is a charge levied by Texas Gas Transmission and is paid by Gas Utilities to the transmission company. The gross receipts charge is comprised of taxes and insurance premiums levied against Gas Utilities Company.

On November 15, 1974, Marathon filed an application for rehearing, supported by affidavit, under section 67 of the Public Utilities Act of Illinois, (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 71) claiming that it had new and further evidence which would show that the application of a percentage mark-up to the price of gas charged would result in Marathon's paying a profit to Gas Utilities that was totally unrelated to the costs incurred in supplying services, and which would result in a profit far in excess of that found reasonable and proper by the Commission in its order. Marathon alleged that such evidence was not available at the time of the hearing for the reason that the rate schedule proposed in the Commission's order was not available until the date of the order itself, October 16, 1974.

The Commission failed to either grant or deny the petition for

rehearing within 20 days of its receipt, and according to Rule 18 of the Rules of Practice of the Commission, such petition was thereby deemed denied and finally disposed of for purposes of appeal.

Marathon, pursuant to section 68 of the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 72), then appealed to the circuit court of Crawford County, which denied its request that the court remand the case to the Commission with directions that the Commission accept Marathon's proffered further evidence. The circuit court subsequently considered the entire record before the Commission, again accepting briefs and oral arguments on the issue of remandment. The court denied Marathon's appeal, ruling that the order of the Commerce Commission was sustained by the manifest weight of the evidence; that the Commission made findings of fact in support of its decision, and that the decision was within the scope of its statutory authority.

Marathon has appealed to this court presenting the issues (1) whether the Commission improperly refused to accept new evidence of Marathon which was proffered pursuant to section 68 of the Public Utilities Act and whether this cause should be remanded to the Commission for the presentation of such new evidence; (2) whether the order of the Commission was discriminatory; (3) whether the order of the Commission was just and reasonable; and (4) whether the findings of fact and conclusions of the Commission were supported by the evidence.

■■ The court's power to remand a decision to the I.C.C. exists when it appears that the Commission failed to receive evidence properly proffered on a hearing or rehearing. (Public Utilities Act, sections 67 and 68 (Ill. Rev. Stat. 1973, ch. 111 2/3, pars. 71 and 72); *People's Gas Light & Coke Co. v. City of Chicago*, 309 Ill. 40; *Produce Terminal Corp. v. Illinois Commerce Com. ex rel. Peoples Gas Light & Coke Co.*, 414 Ill. 582, 112 N.E.2d 141.) The remandment to the Commission with directions to accept the proffered evidence may be made independently of any finding by the court that the Commission's order was unlawful or unreasonable. *County of Henderson v. Chicago, Burlington & Quincy R.R. Co.*, 320 Ill. 608, 151 N.E. 542, citing with approval *People's Gas Light & Coke Co. v. City of Chicago.*

The statutes make it plain that the standards governing the presentation of new evidence to the Commission are not to be stringently applied. Marathon claims that it should have been granted a rehearing pursuant to such statutes to permit it to present new evidence concerning the adverse and illegal effect of the new rate fixed by the Commission's order. We agree.

The assertions of Marathon cannot be termed frivolous or as made in bad faith. The evidence which they seek to present would show,

according to the affidavit which accompanies their petition for rehearing, that the application of the new rate to Marathon will result in the production of revenue to Gas Utilities far in excess of the 7.7 percent rate of return on an original cost base of $1,333,437, or approximately $103,000 operating income which the Commission found to be reasonable.

■■ Respondents argue that the evidence Marathon sought to present was not "new" since Marathon knew, or should have known, that the Commission might adopt a percentage rate of mark-up on gas sold rather than a flat rate as had been utilized in the previous rate schedule applied to Marathon. However, even if such statement be true Marathon could not divine in advance what percentage rate the Commission might allow and accordingly should not be required to, first, anticipate that the Commission would adopt a percentage rate schedule and then, second, devise some sort of shotgun evidence approach to show the effect of such a rate. Orderly process in fixing the rate to be paid by Marathon requires that the Commission now consider the effect that their new rate will have on Marathon. It does not appear from the record that any consideration was given to any effect the new rate would have beyond the test year, which was 1973. The Commission did not consider Marathon's petition, choosing instead to effectively deny it by not acting on it within 20 days.

In *People's Gas Light & Coke Co. v. City of Chicago* the supreme court noted that the rate fixing procedure is statutory, and the statute gives the court power to determine from the evidence whether the decision is lawful and reasonable. If it is, it is to be confirmed; if it is not, it is to be set aside. The court then made the following statement which we deem applicable here:

> "There is but one instance where the court has authority to remand the cause to the commission, and that is where it appears the commission failed to receive evidence properly offered, in which event the court is authorized to remand the cause to the commission, with instructions to receive the testimony so offered and rejected and to reconsider the case in view of the new evidence." 309 Ill. 40, 42.

Accordingly we remand this case to the Commission pursuant to section 68 of the Public Utilities Act with instructions to receive the evidence proffered by Marathon in its petition for rehearing, and to enter a new order based upon the evidence theretofore taken, and such new evidence as it shall receive.

In the view we have taken of this case it will be unnecessary to consider the remaining issues raised by Marathon. In the absence of the proffered evidence we cannot determine whether the order of the Commission was discriminatory, whether the order was just and reasonable or whether the

findings of fact and the conclusions of the Commission were against the manifest weight of the evidence.

Remanded with instructions.

EBERSPACHER, J., concurs.

Mr. PRESIDING JUSTICE CARTER, dissenting:
I respectfully dissent.

In my opinion, Marathon Oil Company should not be granted a rehearing pursuant to such statutes.

The court's power to remand a decision to the I.C.C. exists when it appears that the Commission failed to receive evidence properly proffered on a hearing or rehearing. (Public Utilities Act, section 68 (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 72); *People's Gas Light & Coke Co. v. City of Chicago*, 309 Ill. 40; *Produce Terminal Corp. v. Illinois Commerce Com. ex rel. Peoples Gas Light & Coke Co.*, 414 Ill. 582; 112 N.E.2d 141.) The remandment to the Commission with directions to accept the proffered evidence may be made independently of any finding by the court that the Commission's order was unlawful or unreasonable. (*County of Henderson v. Chicago, Burlington & Quincy R.R. Co.*, 320 Ill. 608, 151 N.E. 542 (1926), citing with approval *People's Gas Light & Coke Co.*) Even assuming arguendo that the court has the power to remand a case to the Commission when a rehearing has been improperly denied, the court cannot find such an action justified in the case at bar.

Marathon's "new" evidence is the effect of the application of the percentage mark-up permitted by the gas rate schedules in the Commission's order. Marathon's position is that an amount far exceeding the 7.7 percent rate of return on an original cost base of $1,333,437, established in Finding Number 12 of the order, or approximately $103,000 operating income, will be realized if the formula for determining Marathon's bill to Utilities is utilized (the sum of the demand, commodity and gross receipts charges plus an 8 percent mark-up on the total). Marathon contends that Gas Utilities should be paid only the cost of the gas, with some adjustments, plus a profit determined by a fixed mark-up in cents added to every MCF of gas purchased by Utilities, plus a percentage mark-up to cover revenue-related expenses.

Marathon's claim to a rehearing on the ground that this evidence was not available to it at the time of the hearing because it did not know that a percentage mark-up rather than a fixed mark-up would be used belies its experience in the gas service business and is contrary to the evidence. Michael Drazen, a Marathon witness at the hearing, while not advocating

374

the use of a percentage mark-up as the sole means of providing Utilities with a profit, acknowledged its use as a method of assessing Marathon's bill. Marathon cannot be heard now to say that it had no idea that such a method might be used.

Also, the procedure before the Commission when seeking a rate hike is to file and ask to have approved a new rate sheet. Gas Utilities filed such a sheet, designated as I.C.C. No. 3, Second Revised Sheet 18, which sought a percentage increase based on the cost of gas to Gas Utilities. Likewise, Marathon's cross-examination of a Gas Utilities witness, J. M. Imlay, revealed that Gas Utilities was seeking a percentage mark-up to cover its costs of buying gas from its supplier, and to make a profit in its sale to Marathon.

All of this evidence establishes that Marathon had actual notice that a percentage mark-up might be used; while the actual percentage established might not have been known until the order was issued, the effects of such a method could reasonably have been anticipated by Marathon.

The purpose of allowing new and additional evidence before the Commission is to update the record when a material development has taken place which could change the decision of the Commission, such information not being available at the time of the original hearing. There was no such situation in the case at bar; therefore, the petition for rehearing was not improperly denied by the Illinois Commerce Commission.

Because the petition for rehearing was not improperly denied, I would affirm the order of the Illinois Commerce Commission and the decision of the Circuit Court of Crawford County.