## G. O. WILLIAMS

### *v.*

### THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

*Opinion filed October 23, 1907.*

RAILROADS—*when the property owner is not entitled to a "farm crossing."* The owner of an unplatted strip of land within the limits of a city, which is not used for agricultural purposes, is not entitled to a "farm crossing" over an adjoining railroad right of way under section 1 of the act relating to the fencing and operation of railroads, as amended in 1879, even though the business conducted upon the land necessitates crossing the railroad tracks to reach any street or alley.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. A. H. FROST, Judge, presiding.

This was a proceeding brought by appellant in a justice court of Winnebago county to recover double the value of a crossing put in by him across appellee's right of way, and alleged to have been a farm crossing constructed in accordance with paragraph 66 of chapter 114, in reference to fencing and operating railroads. (Hurd's Stat. 1905, p. 1578.) Appellant recovered in the original proceeding, but on appeal to the circuit court, at the close of appellant's proof a verdict was directed for appellee. Motion for new trial was thereafter overruled and judgment entered against appellant. On appeal to the Appellate Court that judgment was affirmed. A certificate of importance having been granted an appeal was taken to this court.

Appellant owns a narrow strip of land in the city of Rockford lying between appellee's right of way on the easterly side and the Rock river on the westerly side. It is about five hundred and fifty feet long and comes to a point at its northerly end, where the westerly line of the right of way

228—38

of appellee strikes the easterly bank of the Rock river, and is about seventy-five feet in width at the southerly end. Rock river flows through the city of Rockford here in a south-westerly direction. Appellee's right of way lies nearly parallel to the river in this vicinity and is quite close to it. The land here in question has not been subdivided into lots or blocks. With the exception of the river, and of a tract of land also lying between the railroad and the river and adjoining this tract on the southerly end thereof, all the land around this property appears to be platted and subdivided. Blocks 1 and 2 of a certain subdivision adjoin said right of way on the easterly side at this point, and between these blocks is an alley sixteen feet wide, which extends from the easterly line of said right of way to the first street lying easterly from the railroad. Within the limits of said blocks 1 and 2 are located certain switch tracks from appellee's railroad, which run across said alley. Appellant has no outlet by any public way, street or alley from his strip of land. Before appellant bought the strip, and as far back as 1889, there was a crossing at the westerly end of the alley over the railroad right of way by which access was had to the boiler works then located on this land. The property lay idle for several years after it was purchased by appellant and the planks in that crossing became rotten and were taken out by appellee. Thereafter the land was rented for a term of years by appellant, and the tenant erected an ice house thereon and stored ice. The tenant hauled small loads of ice across appellee's right of way at this point into the alley over a temporary crossing made with dirt, but wishing to haul loads of 7000 pounds on wagons weighing a ton and a half, and finding it difficult or impossible to go over the track with such loads, an attempt was made to put in a farm crossing under the provisions of the said act of 1874, as amended, in reference to fencing and operating railroads. Appellant, on November 8, 1905, served a written notice on appellee that the crossing over its railroad

track and right of way at the westerly end of such alley was out of repair, and that appellee should repair and place the same in a reasonably safe condition as a crossing for teams and wagons within ten days. At the expiration of the ten days appellant caused to be built the crossing, making an embankment on the side of the tracks and planking the tracks. Appellee took out the planks. Appellant replaced them and they were again removed by appellee, and were replaced the third time by appellant and again removed by appellee. This action was then instituted.

FISHER & NORTH, for appellant.

STANTON A. HYER, (S. A. LYNDE, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The sole question at issue is whether appellant is entitled to a farm crossing at this point. The proof does not show that this land had ever been used for agricultural purposes. For some time before appellant owned it, boiler works had been located thereon. It was left unused by appellant for several years after he had purchased it, except that boats seem to have landed at this point and people went there to bathe in the river, but it is not shown that a crossing was used at this point from the time appellant bought the property until he leased it to the present tenant. Neither was it shown whether or not appellant owns to the center of Rock river immediately adjacent to this property, and the evidence does not disclose where the ice that is placed in this ice house is obtained. This strip of land in its natural state does not average more than two feet above the ordinary height of the river.

Section 1 of the Railroad Fencing and Operating act of 1874, as amended in 1879, (Hurd's Stat. 1905, p. 1577,) reads in part: "That every railroad corporation shall * * *

erect and thereafter maintain fences on both sides of its road or so much thereof as is open for use, suitable and sufficient to prevent cattle  *  *  * from getting on such railroad, except at the crossings of public roads and highways, *and within such portion of cities and incorporated towns and villages as are or may be hereafter laid out and platted into lots and blocks,* with gates or bars, at the farm crossings of such railroad, which farm crossings shall be. constructed by such corporation when and where the same may become necessary, for the use of proprietors of the lands adjoining such railroad." Other sections of the act immediately following provide that if the railroad corporation neglects or refuses to build such farm crossings the owner may give notice in writing, and then, if such crossings are not put in within thirty days or repaired within ten days, the owner or occupant of the land may build or repair such farm crossings and shall be entitled to recover double the value thereof, with interest. That portion in italics, before the amendment of 1879 read, "and within the limits of cities and incorporated towns and villages."

It is conceded by appellant that neither fences nor farm crossings were required to be erected by railroad companies along their rights of way within the limits of cities, incorporated towns and villages by the original act of 1874, but it is insisted that the act so amended required fences to be built in such portions of cities, incorporated towns and villages as are not laid out and platted into lots and blocks; that thereafter it was also intended that farm crossings should be built or repaired, in accordance with the statute, within such cities, incorporated towns or villages along the unplatted portions where fences were built. We do not think this conclusion follows. The word "farm" has a well defined meaning. The Standard Dictionary defines a farm as "a tract of land under one control or forming a single property devoted to agriculture, stock raising, dairy produce or some allied industry." Worcester's Dictionary de-

fines it as "a tract of ground cultivated or designed for cultivation by a farmer." Webster's Dictionary defines it to be "a piece of ground devoted by its owner to agriculture." In *People* v. *Caldwell,* 142 Ill. 434, this court (p. 441) defined a farm as "both by the standards and in common acceptation  *  *  *  to be a body of land, usually under one ownership, devoted to agriculture, either to the raising of crops, or pasture, or both."

Plainly, under these definitions, and under the common and general understanding as to the meaning of "farm," this strip of land in question cannot be held to be one. Had the legislature intended that farm crossings should be built or repaired under this provision wherever necessary along unplatted land within the limits of a city, incorporated town or village, it is not reasonable to suppose that the term "farm crossing" would have been the term used to convey the meaning intended. This statute, in requiring farm crossings wherever necessary, was intended, as was said of a New York statute on the same subject, "to secure to the farmer the crossing most convenient to him in the reasonable and customary use and occupation of his premises." (*Wheeler* v. *R. S. Railroad Co.* 12 Barb. 227.) If unplatted land lying within the incorporated limits of a city, town or village, and actually used for farming purposes in the ordinary and accepted definition of that term, were crossed by a railroad right of way, then a different question would be presented than is before us on this record. As was said by this court in *Chalcraft* v. *Louisville, Evansville and St. Louis Railroad Co.* 113 Ill. 86: "It is quite evident it could not have been intended the interests of the land owner or occupant are alone to be consulted, for the question also affects the interests of the railroad company and the public." See, also, *Illinois Central Railroad Co.* v. *Willenborg,* 117 Ill. 203; *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 id. 309; *Chicago, Burlington and Quincy Railway Co.* v. *People,* 212 id. 103.

While it is clear the business carried on by appellant on the property in question requires an outlet to the public street, it is equally clear that this provision of the statute as to farm crossings was not intended to cover a case of the kind presented by this record.

The judgment of the Appellate Court will accordingly be affirmed.                    *Judgment affirmed.*