(No. 27876.—

ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, *vs.*
FRANKLIN COUNTY *et al.*—(THE COUNTY OF FRANK-
LIN, Appellee.)

*Opinion filed September 19, 1944.*

JOSEPH H. WRIGHT, (VERNON W. FOSTER, and CHARLES A. HELSELL, of counsel,) all of Chicago, for appellant.

LEONARD J. DUNN, State's Attorney, of West Frankfort, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Franklin county, setting aside an order of the Illinois Commerce Commission.

The cause originated with the filing of a petition by appellant in which it sought an order requiring the renewal and improvement, or, in the alternative, the abandonment, of two overhead highway bridges extending over and across its main track in Franklin county. One of said bridges is located at a point where State Aid Road No. 3 crosses said railroad. This bridge is designated in the record made before the commission as U-64-5. The other bridge mentioned in the petition is located at a point where State Aid Road No. 7 crosses appellant's railroad. This bridge is referred to in the record as U-65-8. After a hearing in which both appellant and appellee participated, the commission found that the volume of traffic and other conditions were such that it was not warranted in ordering a renewal of bridge U-65-8, at that time.

As to bridge U-64-5, the commission found that the public convenience and necessity required its renewal. It further found that the cost of such renewal should be apportioned one half to appellant and one half to appellee. By its order, appellant was directed to cause said bridge U-64-5 to be renewed within six months from the date of the service of the order. Such renewal to be in accordance

with the plans and blueprints attached to the petition, and, by reference, made a part of the order. Appellee was required and directed to furnish to appellant, within thirty days from the date of the service of the order, satisfactory proof of its intention to assume and pay that part of the cost apportioned to it. It was further ordered that the share of the cost apportioned to appellee should not exceed the sum of $3000, which was found to be one-half of the estimated cost of the renewal of the bridge.

On petition of appellee a rehearing was granted. Additional evidence was heard, and on June 2, 1942, a supplemental order was entered. By this supplemental order the commission again found that there was no pronounced necessity for retaining bridge U-65-8. By this order it directed appellant to make the necessary repairs to bridge U-65-8 and thereafter to maintain the same until the further order of the commission. That portion of its order is not involved on this appeal.

The commission further found that the public safety, convenience and necessity required the renewal of bridge U-64-5. It ordered the reconstruction thereof by appellant, which, the order recited "should be considered as a renewal thereof." The commission estimated the cost at $6000. It ordered such cost apportioned, 60 per cent to appellant and 40 per cent to appellee, and provided that the share of the cost apportioned to appellee should not be in excess of $2400. It contained a like provision as that contained in the former order requiring appellee to furnish satisfactory proof of its intention to assume and pay the share of the cost apportioned to it.

Appellee perfected an appeal to the circuit court of Franklin county for the purpose of reviewing said supplemental order entered on June 2, 1942. Upon a hearing that court set aside the order of the commission. This appeal has been perfected by appellant to review that judgment.

The only question here in dispute is the lawfulness and reasonableness of the order apportioning the cost between appellant and appellee. Appellant contends that this apportionment was a lawful exercise of the police power delegated to the commission by section 58 of the Public Utilities Act. (Ill. Rev. Stat. 1943, chap. 111⅔, par. 62.) It further contends that such apportionment was lawful and was neither arbitrary nor unreasonable. For this reason it insists that the circuit court erroneously reversed and set aside the order of the commission.

Appellee contends that the commission was without power to apportion the cost between appellant and appellee. Its position is that section 58 of the Public Utilities Act does not confer upon the commission 'the power or authority to apportion the cost of repair, reconstruction, or improvement of an existing overhead highway crossing over a railroad; that all such costs should be borne by the railroad company, under section 8 of an act in relation to the fencing and operation of railroads. (Ill. Rev. Stat. 1943, chap. 114, par. 62.) The basis for this contention is a proviso contained in said section 58. This contention necessitates a construction of that section of the Public Utilities Act.

As originally enacted in 1913, section 58 contained only two paragraphs. (Laws of 1913, p. 489.) That section as then enacted, read as follows:

"No public road, highway or street shall hereafter be constructed across the track of any railroad company at grade, nor shall the track of any railroad company be constructed across a public road, highway or street at grade nor shall the track of any railroad company be constructed across the track of any other railroad or street railroad company at grade, nor shall the track of a street railroad company be constructed across the track of a railroad company at grade, without having first secured the permission

of the commission: *Provided,* that this section shall not apply to the replacement of lawfully existing roads, highways and tracks. The commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe. The commission shall have power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each such grade crossing.

"The commission shall also have power, after a hearing, to alter or abolish any grade crossing, heretofore or hereafter established, when in its opinion the public safety requires such alteration or abolition, or to require a separation of grades at any such crossing; and to prescribe, after a hearing of the parties, the terms upon which such separation shall be made and the proportions in which the expense of the alteration or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad companies affected or between such companies and the State, county, municipality or other public authority in interest."

It will be noted that by the first paragraph of the section, as enacted in 1913, it was provided that no public road, highway or street shall be constructed across the track of any railroad company, nor the track of any railroad company constructed across a public road, highway or street, without first obtaining permission from the commission. This language is followed by the proviso relied upon, which reads: *"Provided,* that this section shall not apply to the replacement of lawfully existing roads, highways and tracks." The first paragraph of said section then concludes by conferring power upon the commission to refuse such permission or to impose such terms and conditions as it may prescribe.

The second paragraph of section 58, as originally enacted, conferred upon the commission the power to alter

or abolish any grade crossing, theretofore or thereafter established, when in its opinion the public safety requires. The commission was further empowered to require a separation of grades at such crossings. It was further empowered to prescribe the terms upon which such grade separations shall be made and the proportion in which the expense of the alteration or abolition of such crossings or the separation of such grades, shall be divided between the railroad companies affected, or between such companies and the State, county, municipality or other public authority in interest.

An analysis of the language of section 58, as it then existed, demonstrates that the only purpose of the proviso, and its only effect, was to render it unnecessary to procure the permission of the commission for the replacement of lawfully existing roads, highways and tracks. The proviso in no way limited the jurisdiction or powers conferred upon the commission, either by section 58 or by other provisions of the act.

In 1917, section 58 was amended by adding thereto several additional paragraphs. (Laws of 1917, p. 644.) The two paragraphs of section 58, as enacted in 1913, were set out at length, as paragraphs one and two, in the amended section, with only minor changes. In so far as this case is concerned, such changes are immaterial. These paragraphs were then followed by the added paragraphs contained in the section, as amended. No subsequent changes have been made in the provisions applicable to the questions here involved.

The first paragraph added to the language of the section by the 1917 amendment, reads as follows:

"The commission shall also have power by its order to require the reconstruction, alteration, relocation or improvement of any crossing (including the necessary highway approaches thereto) of any railroad across any highway or public road, whether such crossing be at grade or

by overhead structure or by subway, whenever the commission finds after a hearing that such reconstruction, alteration, relocation or improvement is necessary to preserve or promote the safety of the public or of the employees or passengers of such railroad. By its original order or supplemental orders in such case, the commission may direct such reconstruction, alteration, relocation or improvement to be made in such manner and upon such terms and conditions as may be reasonable and necessary, and may apportion the cost of such reconstruction, alteration, relocation or improvement between the railroad company or companies and other public utilities affected, or between such company or companies and other public utilities and the State, county, municipality, or other public authority in interest. The cost to be so apportioned shall include the cost of changes or alterations in the equipment of other public utilities affected as well as the cost of the relocation, diversion or establishment of any public highway, made necessary by such reconstruction, alteration, relocation, or improvement of said crossing."

This paragraph, by express language, conferred power upon the commission to order and require the "reconstruction, alteration, relocation or improvement" of any crossing, whether such crossing is a grade crossing, an overhead structure, or a subway. The commission was further expressly empowered to apportion the cost of such reconstruction, alteration, relocation or improvement between the railroad company or companies and other public utilities affected, or between such company or companies and other public utilities and the State, county, municipality or other public authority in interest. The remaining paragraphs added to section 58 by the 1917 amendment are not here material. Ill. Rev. Stat. 1943, chap. 111⅔, par. 62.

Appellee contends that the effect of the proviso contained in the first paragraph of section 58, as enacted in 1913, and carried over into that section as re-enacted in

1917, was to withhold from the commission all power and authority over existing highway crossings over railroads, and to except from the powers granted to the commission by said section all powers relative to the replacement of crossings on lawfully existing roads, highways and tracks. We cannot accept this construction of the proviso.

There is no inconsistency in the proviso and the powers vested in the commission by the original act or the powers expressly conferred upon the commission by the first paragraph, added to the section by the amendment of 1917. The language of the proviso in no sense limits or qualifies the power granted to the commission by the 1917 amendment to require the reconstruction, alteration, relocation or improvement of all highway crossings over railroads. The proviso can only be construed to mean that the permission of the commission is not required for the replacement of lawfully existing crossings. The word "replacement" has a well-understood meaning. Webster defines the word "replace" as meaning to place again; to restore to a former condition. The word "replacement" is defined to mean the act of replacing, or state of being replaced. Something which replaces that which is worn out or discarded. The same definitions have been approved by the courts. *Marcy* v. *City of Syracuse*, 192 N. Y. S. 674, 199 App. Div. 246; *Indemnity Ins. Co. of North America* v. *Gardner*, 214 Ala. 528, 108 So. 342; 6 Words & Phrases (3rd Ser.) p. 717; *Rossier* v. *Union Automobile Ins. Co.* 134 Ore. 211, 291 Pac. 498; 3 Words & Phrases (4th Ser.) p. 366.

From the language used, it is clear that the only purpose of the proviso was to obviate the necessity of obtaining permission of the commission before an existing crossing could be replaced and to make it clear that a railroad company would have the right to replace such crossings without first obtaining permission from the commission.

By the Public Utilities Act the commission was given plenary power over all questions relating to highway cross-

ings over railroads and other equipment and appliances in the interest of the public safety. (*City of Chicago* v. *Commerce Com. ex rel. Chicago and Western Indiana Railroad Co.* 356 Ill. 501; *Chicago and Northwestern Railway Co.* v. *Commerce Com.* 326 Ill. 625; *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,* 287 Ill. 337; *City of Witt* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 324 Ill. 494.) The effect of the provisions of the Public Utilities Act conferring power upon the commission to regulate utilities was to modify or repeal all existing legislation in conflict with those provisions. *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 Ill. 425.

Counsel for appellee also relies upon section 8 of an act in relation to fencing and operating railroads, hereafter referred to as the Railroad Act. That section requires railroads to construct and maintain highway crossings on their rights of way. This was a duty which was also imposed on railroads by the common law. That statute was enacted in 1874. In the *Village of Atwood case,* the Cities and Villages Act was invoked in support of the same argument as that made in this case. We there said: "The Public Utilities act enjoins obedience to the commission's orders. That act is the later one and covers the whole subject of promoting the safety of the public at the intersections of streets and railroads. It is complete in itself and evidently was intended by the General Assembly to supersede the power conferred by subsection 27 of section 1 of article 5 of the general Cities and Villages act to require railroad companies to keep flagmen at street crossings. While repeals by implication are not favored, yet where two statutes are clearly repugnant to each other the later one operates as a repeal of the former. (*Illinois and Michigan Canal* v. *City of Chicago,* 14 Ill. 334; *Dingman* v. *People,* 51 id. 277; *Board of Water Comrs.* v. *Conkling,* 113 id. 340; *McCormick* v. *People,* 139 id. 499; *People* v. *Town*

*of Thornton,* 186 id. 162.) It is a principle of statutory construction that where the General Assembly enacts a new statute upon a certain subject and the legislative intention appears from the act to be to frame a new scheme in relation to and to make a revision of the whole subject, there is, in effect, a legislative declaration that whatever. is embraced in the new statute shall prevail and that whatever is excluded shall be discarded. The revision of the whole subject by the new statute evinces an intention to substitute its provisions for the old law upon the subject. (*People* v. *Town of Thornton, supra; State Board of Health* v. *Ross,* 191 Ill. 87; *People* v. *Freeman,* 242 id. 152; *Hoyne* v. *Danisch,* 264 id. 467.) The Public Utilities act, and that portion of sub-section 27 of section 1 of article 5 of the Cities and Villages act invoked by appellant to sustain the ordinance in question, are so clearly inconsistent and repugnant to each other that both cannot by any fair and reasonable construction be reconciled and made effective."

The rule there announced is particularly applicable here. The acts are so inconsistent that both cannot operate. In this situation the repugnant provisions of the Railroad Act must yield to the Public Utilities Act in so far as those provisions are inconsistent with that act, it being the later act. As so construed, both acts may operate in their respective fields. The provisions of the Railroad Act are still effective in so far as such provisions are not in conflict with, or repugnant to, the provisions of the later Public Utilities Act covering the same subject matter. Any language in the opinion in *Henderson County* v. *Chicago, Burlington and Quincy Railroad Co.* 320 Ill. 608, indicating that the duty of a railroad company, either at the common law or under section 8 of the Railroad Act, was not modified by the Public Utilities Act, is not in harmony with numerous decisions of this court and is not followed.

While it is true that section 58, as originally enacted in 1913, did not expressly confer power upon the commission to order or require the replacement or improvement of lawfully existing highway crossings, such power was clearly conferred by other provisions of the act. There is nothing in the proviso which limits or restricts the powers conferred upon the commission, either by section 58 or by other provisions of the act.

Under the general powers granted to the commission by the Public Utilities Act, it is clear that even before section 58 was amended in 1917, the commission had ample power to order an existing crossing replaced, improved, repaired or relocated. It was so held by this court in *Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh,* 278 Ill. 609. The order was entered in that case on January 19, 1916. The opinion was filed prior to the effective date of the 1917 amendment. Its powers in this respect were in nowise restricted by the proviso. As already observed, the only effect of the proviso was to render it unnecessary to obtain permission of the commission before a lawfully existing crossing could be replaced. It did not take from the commission the power to compel a railroad company to make such replacement whenever such replacement became necessary in the interest of the public safety.

Then, in 1917, the General Assembly, by adding the third paragraph to the section, as it was amended and re-enacted, expressly conferred upon the commission the power to require the reconstruction, alteration, relocation or improvement of any crossing over a railroad on any highway or public road, whether such crossing is a grade crossing or an overhead structure, or a subway. This power may be exercised whenever the commission finds, after a hearing, that such reconstruction, alteration, relocation or improvement is necessary to preserve or promote the safety of the public or the employees or passengers of the railroad. It thus clarified by the specific language of

the 1917 amendment the powers of the commission already existing under the general provisions of the act and the legislative scheme and purpose of such provisions.

In addition to expressly conferring the power on the commission to require the reconstruction, alteration, relocation or improvement of any crossing, the commission was expressly empowered to apportion the cost of such reconstruction, alteration, relocation or improvement between the railroad company or companies, or other public utilities affected, and the State, county, municipality or other public authority in interest. Clearly, neither the powers conferred upon the commission by section 58, as enacted in 1913, nor the powers specifically enumerated in the 1917 amendment to said section were in any way affected by the proviso.

It is next argued by appellee that because the language conferring the power to apportion the cost is followed by the provision that the cost to be so apportioned "shall include the cost of changes or alterations in the equipment of other public utilities affected as well as the cost of the relocation, diversion or establishment of any public highway, made necessary by such reconstruction, alteration, relocation or improvement of said crossing," only the cost of the items thus specifically enumerated may be apportioned.

It is contended that the inclusion clause, as above quoted, limits the items of cost which may be apportioned to the necessary cost of changes or alterations in the equipment of other public utilities affected and the cost of relocating, diversion or establishment of any public highway, and do not authorize the apportionment of the cost of the replacement, improvement or repair of an existing highway crossing.

In support of this position, appellee invokes the familiar maxim *expressio unius est exclusio alterius*. In the interpretation of statutes, the rule embodied in that expression is a sound and well-known rule of construction. It is not a rule of law. It is merely a rule applied to assist in arriv-

ing at the real intention of the lawmakers, where such intention is not clearly manifest from the language used. (Sutherland on Statutory Construction, secs. 325, 326.) It may be resorted to only for that purpose. It may not be used to defeat or override the legislative intention expressed. It may not be used to create doubt, but only to remove it. (59 C. J. 943, sec. 563.) It must yield whenever a contrary intention appears. (50 Am. Jur. 241, sec. 246.) It is to be applied with caution and merely as an auxiliary rule to determine the legislative intention. (Beal's Cardinal Rules of Leg. Interp. (3d ed.) 353; Crawford, Statutory Construction, p. 337, sec. 195; Endlich, Interp. of Statutes, pp. 558-559, secs. 398-399.) This maxim is to be applied only when it appears to point to the legislative intent, and never to defeat the plainly indicated purpose of the lawmaking body. (*Swick* v. *Coleman,* 218 Ill. 33.) The rule should never be followed to the extent of overriding a definite intent of the legislature. *Consumers Co.* v. *City of Chicago,* 313 Ill. 408; *Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528.

The word "include" is sometimes used merely to specify particularly that which belongs to the genus already expressed in more general terms. It is sometimes used to add to the general class a species which does not naturally belong to it. (*Montello Salt Co.* v. *State of Utah,* 221 U. S. 452, 55 L. ed. 810; *United States* v. *Pierce,* 147 Fed. 199.) It may be used to preface an illustrative example of a general power already granted, *Helvering* v. *Morgan's, Inc.,* 293 U. S. 121, 79 L. ed. 232, 55 S. Ct. 60, or it may serve to define that power or even enlarge it. Whether it is the one or the other must be determined by the purpose of the act, to be ascertained in the light of the context, the legislative history and the subject to which the statute is to be applied. *Phelps Dodge Corp.* v. *National Labor Relations Bd.* 313 U. S. 177, 85 L. ed. 753, 61 S. Ct. 845, 133 A. L. R. 1217.

Section 26 of an act relating to Federal land banks (12 U. S. C. A. 931) provides that "Every Federal Land Bank and every National Farm Loan Association, *including* the capital and reserve or surplus therein, and the income derived therefrom," shall be exempt from Federal, State, municipal and local taxation. The Supreme Court of North Dakota, in *Federal Land Bank of St. Paul* v. *Bismarck Lumber Co.* 70 N. Dak. 607, 297 N. W. 42, held that under the including clause, the exemption from taxes applied only to taxes on the capital and reserve or surplus and income derived therefrom, as specified in the "including" clause. Under this construction, the State court held that the Federal land bank was liable to pay a State sales tax. In reversing that decision, the Supreme Court of the United States said that the term " 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Federal Land Bank of St. Paul* v. *Bismarck Lumber Co.* 314 U. S. 95, 62 L. ed. 1.

Section 10 of the Public Utilities Act of 1913 (Ill. Rev. Stat. 1913, chap. 111a, par. 10,) defines the term "public utility," as used in the act, to mean and "include" every corporation, company or association who may be engaged in the business of owning, controlling or managing any plant, equipment or property used, among other things, "for the storage or warehousing of *goods.*" This provision is followed by a definition of the term "warehouse," which is defined to *include* elevators or storehouses where *grain* is stored for compensation. In the case of *Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528, it was contended that under the maxim *expressio unius est exclusio alterius,* this inclusion clause limited the application of the act to warehouses used for the storage of grain, as specified in the including clause defining the term "warehouse." It was argued that by the specific definition of warehouses, as including warehouses used for the storage

of grain, the preceding language referring to warehouses used for the storage of goods was limited to warehouses used for the storage of grain, and did not extend to warehouses used for the storage of other goods. It was there said: "The argument is, that because the legislature uses the word 'grain' instead of 'goods' when it says that the term 'warehouse' shall include all elevators or storehouses where *grain* is stored, etc., the express mention of the word 'grain' in connection with the words 'elevators or storehouses' is an exclusion of all other elevators or storehouses where any other property, goods or commodity is stored, under the rule that the express mention of one thing is an exclusion of all others. With this contention we do not agree. The maxim, *'expressio unius est exclusio alterius,'* should never be followed to the extent of overriding a different intent clearly expressed. (*Gaddis* v. *Richland County,* 92 Ill. 119; *Helm* v. *City of Grayville,* 224 id. 274.) To give this act the construction contended for by appellant and limit the jurisdiction of the commission to those public agencies which are engaged in storing grain would render the law, in some of its most essential provisions, wholly meaningless and inoperative. Such a construction is to be avoided. It is well settled that in construing statutes the intention of the legislature will control. *Hogan* v. *Akin,* 181 Ill. 448; *People* v. *Harrison,* 191 id. 257; *Hoyne* v. *Danisch,* 264 id. 467."

Here, the legislature, by the applicable provisions of section 58, first conferred upon the commission the power to require the reconstruction, alteration, relocation or improvement of any highway crossing, including the necessary approaches thereto. It then provided in appropriate language that the cost of such reconstruction, alteration, relocation or improvement of any such crossing, including the approaches thereto, might be apportioned between the railroad companies and other public utilities affected, or between such company or companies and other public utili-

ties and the State, county, municipality or other public authority in interest. It further provided that the cost to be apportioned "shall include the cost of changes or alterations in the equipment of other public utilities affected as well as the cost of the relocation, diversion or establishment of any public highway, made necessary by such reconstruction, alteration, relocation or improvement of said crossing." Clearly, this including clause enlarged rather than detracted from that which preceded it. It was obviously inserted in order to make clear the legislative intent that the cost to be apportioned should not only be the cost of the reconstruction, alteration, relocation or improvement of the crossing, but should also include the cost of changes or alterations in the equipment of other public utilities affected, as well as the cost of the relocation, diversion or establishment of any public highway, made necessary by such reconstruction, alteration, relocation or improvement of such crossing. The fact that the word "improvement" was omitted from the inclusion clause is wholly insignificant. . The inclusion clause related to cost not naturally included in the general expression which preceded it. Its effect was to enlarge that general expression and give to the commission the power to apportion not only the cost of the reconstruction, alteration, relocation or improvement of a highway crossing, but the cost of all changes in the equipment of other utilities, as well as the cost of the relocation, diversion or establishment of any highway, made necessary by such reconstruction, alteration, relocation or improvement of the crossing. Any other construction would render important parts of the section meaningless and be contrary to the whole scheme and purpose of the legislative intent clearly expressed in its comprehensive and all-inclusive provisions.

It will be noted that this paragraph of section 58, also contains another "including" clause. In conferring upon the commission the power to require the reconstruction,

alteration, relocation or improvement of any crossing, the words "including the necessary highway approaches thereto" are used. Certainly no one would seriously contend that, by the use of those words of inclusion, the legislature intended to limit to the highway approaches, only, the powers conferred on the commission to require the reconstruction, alteration, relocation or improvement of any crossing.

It is our conclusion that section 58 conferred upon the commission the power, when in its judgment the public safety requires, to order the reconstruction, alteration, relocation or improvement of any existing highway crossing over a railroad track. We are further of the opinion that, having ordered such reconstruction, alteration, relocation or improvement of any such crossing, it has the power to apportion the cost of such reconstruction, alteration, relocation or improvement, and also the cost of all changes in the equipment of other utilities, as well as all cost of the relocation, diversion or establishment of any public highway, made necessary by such reconstruction, alteration, relocation or improvement of the crossing. All such costs are to be apportioned between the railroads and other public utilities affected, as well as between such railroad or railroads and other public utilities and the State, county, municipality or other public authority in interest. In view of this conclusion it follows that the order of the commission involved in this case was within its powers and was not unlawful, if sustained by the evidence.

Appellee's final contention is that there is no basis, either in law or in fact, on which the order of the commission can be sustained.

The rule is definitely settled that the State has the unquestioned police power to regulate grade crossings in the interest of public safety. (*Chicago and Northwestern Railway Co.* v. *Commerce Com.* 326 Ill. 625.) In the exercise of the police power for the promotion of the public safety,

a wide discretion is necessarily vested in the legislature. It may determine what the public interests require, and also what measures are necessary for the protection and promotion of those interests. (*City of Chicago* v. *Commerce Com.* 356 Ill. 501.) By the Public Utilities Act this power was delegated to the Commerce Commission. Subject to review by the courts as provided in that act, the orders of the commission are conclusive. The commission's jurisdiction over all phases of grade-crossing regulations has been recognized as plenary and exclusive. This power also extends to the apportionment of cost. The apportionment of the cost, by the commission, is as much an exercise of the police power as the determination of the necessity for the construction or improvement of a highway crossing. *City of Chicago* v. *Commerce Com.* 356 Ill. 501; *Commerce Com. ex rel. City of Bloomington* v. *Cleveland, Cincinnati, Chicago and St. Louis Ry. Co.* 309 Ill. 165; *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,* 287 Ill. 337.

In reviewing an order of the commission, the courts are limited to a consideration of the questions of whether the commission acted within the scope of its authority, whether it made findings to support its decision, whether the findings and the decision have a substantial foundation in the evidence, and whether constitutional rights have been infringed by the decision. The statute does not authorize a court to put itself in the place of the commission and to determine independently the issues presented, or to substitute its judgment for that of the commission. *City of Chicago* v. *Commerce Com.* 356 Ill. 501.

Orders of the Commerce Commission are entitled to great weight. They can be set aside only when it is clearly apparent that such orders are arbitrary or unreasonable or directly contravene some established rule of law. This court is not authorized to try anew the questions in controversy and substitute its judgment for that of the com-

mission. It can only determine whether the commission's findings are supported by the evidence. (*Chicago North Shore and Milwaukee Railroad Co.* v. *Commerce Com. ex rel. Dept. of Public Works,* 354 Ill. 58.) In this·case the order is in proper form. The commission made definite and specific findings upon every point involved. These findings have ample support in the evidence.

While appellee asserts in its brief that there is no basis, either in law or fact, to sustain the· order, it makes no attempt to point out anything to·support this general charge. No finding of the commission is pointed out which, it is claimed, is not supported by the evidence. In appellee's brief the evidence is not discussed or even referred to. Nowhere is its alleged insufficiency pointed out, or even suggested. The only argument made· on the facts at all, is the contention that the work ordered by the commission constitutes an ordinary expense of repair or maintenance imposed upon the railroad company by the above section of the Railroad Act, and which is excluded from the jurisdiction of the commission by the proviso in section 58 of the Public Utilities Act. We have carefully examined all of the evidence in the record. It is our conclusion that every finding of fact contained in the order of the commission is amply supported by substantial evidence. The only suggestion found in appellee's brief in support of its contention that the order is arbitrary and unreasonable is the argument with reference to the apportionment of the cost between appellant and appellee. This question is discussed by appellee, as a matter of law, without any reference to the evidence on which the apportionment was based. Appellee's position is that no apportionment could be lawfully made. We have already pointed out that the commission had lawful authority to apportion the cost. The amount to be apportioned to the parties affected was a matter for the commission to determine from the evidence. An examination of the evidence discloses that the finding of

the commission on this point and the apportionment made are amply supported by the evidence. The court will review the facts, the determination of which is committed to the commission and upon which it has made specific findings, only for the purpose of determining whether such findings are supported by substantial evidence in the record. Upon this record we cannot say that the order here involved is unlawful or that it is arbitrary or unreasonable. The order, as entered, in all respects complies with the law and has a substantial basis in the evidence. The circuit court erred in setting aside that order.

The judgment of the circuit court of Franklin county is reversed. The order of the commission is confirmed.

*Judgment reversed; order of commission confirmed.*