(No. 34448.—

FOREST PRESERVE DISTRICT OF DU PAGE COUNTY, Appellee, *vs.* ILLINOIS COMMERCE COMMISSION *et al.,* Appellants.

*Opinion filed November 20, 1957.*

LATHAM CASTLE, Attorney General, of Springfield, (HARRY R. BEGLEY, and ELMER MICHAEL WALSH, JR., of counsel,) for appellant Illinois Commerce Commission, and CARL E. BAGGE and FLOYD J. STUPPI, both of Chicago, for appellant Santa Fe Railway Company.

ROBERT J. SCOTT, of Glen Ellyn, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The Forest Preserve District of Du Page County filed with the Illinois Commerce Commission a petition seeking permission to construct a road at grade across the right of way of the Atchison, Topeka and Santa Fe Railway Company. The railroad's answer alleged a lack of public convenience and necessity and the availability of a satisfactory alternate route. The Commission found that public convenience and necessity did not presently require the proposed crossing and that it would not be in the public interest, and denied the petition. The circuit court of Du Page County set aside the Commission's order, and the Commis-

sion and the Santa Fe have appealed. Ill. Rev. Stat. 1957, chap. 111⅔, par. 73.

The District owns three separate tracts of land which, taken together, form a parcel that is roughly in the shape of the letter "U." Tract B is the base, tract A the easterly arm, and tract C the westerly arm. The southern boundary of tracts A and C is the Santa Fe right of way. That right of way is also the northern boundary of tract B. The Des Plaines River is the southern boundary of tract B. The proposed road across the right of way would connect tracts A and B.

Tract B is low lying, marshy land. It is frequently flooded by the Des Plaines river, and in its present condition it cannot be used by the public. The District plans to raise the entire contour of tract B, except a wooded portion along the river bank, from two to eight feet, by a land filling operation.

The District itself has no statutory power to go into the garbage disposal business or to furnish space for the disposal of garbage. It has, however entered into an agreement with the county board of supervisors (who are *ex officio* the commissioners of the District) whereby the county, which does have statutory authority to conduct landfill operations, proposed to operate a sanitary land fill for the disposal of refuse and garbage on tract B. Garbage and refuse, collected throughout the county by private scavengers, will be conveyed by trucks through tract A and across the proposed crossing to tract B where it will be dumped as directed by the county. The accumulated garbage and refuse will be covered by layers of earth which will be obtained from a hill on tract A and trucked across the railroad tracks. The private scavengers who will be permitted to dump garbage and refuse on tract B will pay the county $1.00 per ton for that privilege; the District will receive ten or twenty-five cents per yard for the cover material it furnishes from tract A.

It will be at least twenty years before the west half of tract B can be filled, and the entire tract will not be available for forest preserve use for thirty years. When the project is completed the county will return tract B to the District. The District does not now have plans for the development of tract B after the fill is completed. There is testimony to the effect that tract B might be developed into a fishing and boating resort. Under existing statutes it could be leased to a public utility company.

There is need for a new site for garbage disposal, as the county's present sanitary land fill will serve the purpose for only about seven more years. Tract B is suitable for a land fill, is zoned to permit that use, is not near a residential area and is conveniently located. Other sites for the disposal of garbage and refuse are, however, available.

The land-fill operation contemplates that loaded or empty trucks would cross the tracks of the Santa Fe on an average of one every three minutes during an eight-hour day. The county trucks carrying fill would weigh approximately five tons, and the scavenger trucks would, in some instances, weigh as much as ten tons. The District proposes to keep the crossing open only between 8:00 A.M. and 4:00 P.M., and to close it completely on Sundays and holidays.

It is possible to conduct the proposed land-fill operations on tract B by using another route. State Route No. 83 is less than half a mile east of the proposed grade crossing. It is a four-lane highway which crosses the Santa Fe right of way by means of an overpass. At the south end of the overpass there are turnoffs from the highway both to the east and to the west. These turnoffs are adequate for ordinary travel but would require improvement for truck traffic. The owner of the land to the west, between the highway and tract B, has indicated that he would grant the county an easement for access to tract B. If he did not, a right of way could be obtained by eminent domain. Access could also be obtained from the eastern turnoff by passing under the

highway and proceeding to tract B. Use of Route No. 83 instead of the proposed crossing would increase the distance involved in trucking cover material from tract A to tract B by something less than a mile.

The Commission found that the alternative route, while not affording a direct connection between tracts A and B, would nevertheless enable the District to accomplish the fill necessary before tract B can be used for forest preserve purposes, and that it would avoid the necessity of an additional grade crossing with its attendant hazards. It also found that there is no possibility of public use of the proposed crossing for many years; that public convenience and necessity do not now require the proposed crossing; that such convenience as it would afford would inure to so few persons as not to constitute the general public, and that the use of the alternative route to avoid the dangers of a railway crossing at grade is particularly desirable because heavy trucks would constitute the traffic that would use the crossing.

Section 58 of the Public Utilities Act provides: "No public road, highway, or street shall hereafter be constructed across the track of any railroad company at grade, * * * without having first secured the permission of the commission. * * * The commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe." (Ill. Rev. Stat. 1957, chap. 111⅔, par. 62.) Section 68 limits the scope of review permitted on appeals from final orders of the Commerce Commission. (Ill. Rev. Stat. 1957, chap. 111⅔, par. 72.) An order of the Commission should not be set aside unless it clearly appears that its finding is against the manifest weight of the evidence or that the Commission lacked jurisdiction to enter the order. (*Chicago Junction Railway Co.* v. *Commerce Com.* 412 Ill. 579.) The statute does not authorize a court to put itself in the place of the Commission, determine independently the issues presented, and substitute

its judgment for that of the Commission. *Produce Terminal Corp.* v. *Commerce Com. ex rel. Peoples Gas Light and Coke Co.* 414 Ill. 582; *Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301; *City of Chicago* v. *Commerce Com. ex rel. Chicago and Western Indiana Railroad Co.* 356 Ill. 501.

The record in this case does not reflect any substantial controversy as to the physical facts, and those facts are accurately stated in the Commission's findings. The most important of the disputed questions concerns the public character of the use to be made of the proposed crossing. The District emphasizes that the proposed crossing is intended to facilitate the improvement of tract B, and urges that the improvement of its land is as much the concern of the public, and so as much a matter of public convenience and necessity, as is the ultimate use of the land by the public.

This argument amounts to an assertion that the status of the District as a public agency acting within its statutory powers compels a determination that the use that it proposes is a matter of public convenience within the meaning of the Public Utilities Act. But use by a particular public agency for its local purposes is not necessarily synonymous with the broader "public convenience and necessity" with which the Commission is concerned. Here the Commission properly took into account that for many years the principal use of the proposed crossing would be by private persons, whose convenience it would primarily serve, and it properly weighed that circumstance against the asserted benefit to the public agency. While the fact of benefit to a public agency in the accomplishment of its statutory powers is a factor that must always be taken into account, it is not conclusive. *Illinois Central Railroad Co.* v. *Commerce Com.* 395 Ill. 303; *O'Keefe* v. *Chicago Railways Co.* 354 Ill. 645.

In this case the Commission also considered the possibility of an alternative route by which the District might

obtain access to tract B. In this court the District takes a narrow view of its statutory powers, and relying on general statements in *Washburn* v. *Forest Preserve District,* 327 Ill. 479, asserts that it lacks authority to acquire the alternative right of way. Other cases suggest a different conclusion. (See, *e.g., Forest Preserve District* v. *Chicago Title and Trust Co.* 351 Ill. 48, 53; *Forest Preserve District* v. *Wike,* 3 Ill.2d 49.) But we need not now decide the precise scope of the District's powers, for whatever may be the situation as to the District, it is not disputed that the county has ample powers to take the necessary action. The same persons who are the governing body of the District also constitute the governing body of the county, and the county's direct and immediate interest in the proposed project is apparent.

The District also contends that the order of the Commission was properly set aside because it was arbitrary and an abuse of discretion. At the close of the District's case the railroad moved to dismiss the petition on the ground that the Commission "has no jurisdiction to entertain the petition as there has been no showing of public convenience or necessity for the proposed grade crossing." This motion was denied, and the railroad offered no further proof. Thereafter the Commission considered the merits, and entered its findings and its order denying the petition.

The District contends that "The Commission, in denying the motion perforce of necessity was holding that the proposed crossing was a public use. * * * It cannot be doubted that the Commission, in denying this motion, was in effect deciding all the issues for the Petitioner." Upon this theory as to the effect of the ruling on the motion to dismiss, the ultimate order of the Commission is characterized as arbitrary and an abuse of discretion. We are clear, however, that the Commission's ruling that there was a sufficient *prima facie* showing of public convenience to require it to retain jurisdiction and inquire into the merits

did not bar it from concluding that the showing was insufficient when it came to make its ultimate determination on the merits.

Nor do we think that the order of the Commission was confiscatory or in contravention of the District's constitutional rights. The Commission's order did not take any property away from the District. (See: *Horn* v. *City of Chicago,* 403 Ill. 549.) The Santa Fe's right of way separated tracts A and B when the Forst Preserve District originally acquired the property thirty years ago. The fact that a farm crossing had theretofore existed between tracts A and B does not alter the situation. Private farm crossings are separately treated by statute because of the limited use ordinarily made of them, and a railroad company is not obliged to maintain them when they are not necessary for farm purposes. See: *Williams* v. *Chicago and Northwestern Railway Co.* 228 Ill. 593.

The order of the circuit court of Du Page County is reversed, and the order of the Illinois Commerce Commission is confirmed.

*Circuit court reversed; order of Commission confirmed.*