(No. 40331.—)

Harold E. McMann, d/b/a North American Van & Storage Company, *et al.,* Appellants, *vs.* The Illinois Commerce Commission, Appellee.

*Opinion filed September 29, 1967.*

Van Meter, Oxtoby & Funk, of Springfield, for appellants.

William G. Clark, Attorney General, of Springfield, (Edward G. Finnegan, Assistant Attorney General, of counsel,) for appellee.

Mr. Justice House delivered the opinion of the court:

On December 15, 1959, applicant, Springfield Van and Storage Co., filed an application with the Motor Carrier of Property Division of the Illinois Commerce Commission, defendant, for a certificate of public convenience and necessity seeking authority to operate as a common carrier of household goods and used office furniture and equipment between points and places in Illinois. Harold E. McMann, d/b/a North American Van & Storage Company, Charles E. Wagner and Elizabeth Wagner, d/b/a Underfanger

Storage & Moving Company, and Hillier Storage & Moving Company, plaintiffs, and others, were granted leave to intervene to oppose the application. The Commission entered an order on April 4, 1962, finding applicant's proposed operation to be consistent with the public interest and that there was a present and would be a future need for the proposed services. Plaintiffs were granted a rehearing and on March 18, 1964, the Commission reaffirmed its order. On September 1, 1966, the circuit court of Sangamon County affirmed the Commission's order on rehearing and plaintiffs appeal directly to this court pursuant to our Rule 302(a)(5).

Prior to filing this petition and since its organization in October, 1958, applicant operated a licensed personal property warehouse in Springfield, engaged in interstate transportation of household furniture as an agent of United Van Lines, and moved household furniture and used office furniture and equipment intrastate pursuant to an oral lease of its equipment to a certified Illinois carrier. The propriety of the lease arrangement was challenged by plaintiffs, and the Commission recognized that applicant had been operating in contravention of the Motor Carrier of Property Act. Ill. Rev. Stat. 1965, chap. 95½, par. 282.1 *et seq.*

Plaintiffs first argue that the Commission failed to make a specific finding that existing service is inadequate, and therefore it could not grant applicant the authority to operate. Section 5(a) of the Act does not make such a finding a prerequisite to issuance of a certificate. The salient provisions of that section provide that the Commission "shall issue a certificate * * * if it is found that the applicant is fit, willing and able properly to perform the service proposed * * * and that the proposed service * * * is required by the present and future public convenience and necessity." The requirement of a Commission finding that existing service is inadequate was developed in those cases where existing carriers or utilities have been held to be entitled to territorial protection under the so-called "first in the

field" doctrine. (See, *e.g., Eagle Bus Lines, Inc.* v. *Commerce Com.,* 3 Ill.2d 66; *Citizens Valley View Co.* v. *Commerce Com.,* 28 Ill.2d 294; *Illinois Highway Transportation Co.* v. *Commerce Com.,* 404 Ill. 610.) This theory is based on a consideration of the time and money expended by the pioneer in developing its business and rendering adequate service to the public. *Eagle Bus Lines, Inc.* v. *Commerce Com.,* 3 Ill.2d 66; *Chicago Motor Bus Co.* v. *Chicago Stage Co.,* 287 Ill. 320.

Cases requiring specific findings of inadequacy involved common carriers over regular routes only or utilities confined to a definite area such as electric, gas, water or sewer service. The authority here sought is to provide service over irregular routes all over the State of Illinois. Plaintiffs have not cited nor have we found any case involving common carriers over irregular routes wherein a failure to make the specific finding of inadequacy of service by existing carriers resulted in a reversal of a Commission order. The rationale behind the rule, that is, protecting an existing carrier's investment and avoiding a complete duplication of facilities, is, therefore, not persuasive here. In this specialized type of service it would be difficult, at best, for plaintiffs to show they have expended time and money developing a business over the entire State, and that the granting of this authority would be a duplication of their service over such irregular routes. The Commission did make a specific finding in its original order that the greater weight of the evidence established that other carriers in the same territory were unable to meet the public demand for such services, and in its order on rehearing it made a finding of need for additional service which implies an inadequacy of existing service. We do not think that the failure to make a specific finding of inadequacy was fatal to the Commission's order.

Plaintiffs also contend that the findings made by the Commission are not supported by the record. Specifically, the findings of fitness of applicant, the need for additional

services, and that public convenience and necessity require granting of operating authority to applicant are challenged.

The courts will not set aside an order of the Commission unless it clearly appears that its findings are against the manifest weight of the evidence. *Chicago Junction Railway Co.* v. *Commerce Com.*, 412 Ill. 579; *Forest Preserve District of DuPage County* v. *Commerce Com.*, 12 Ill.2d 319; *Chicago, Burlington & Quincy Railroad Co.* v. *Commerce Com.*, 33 Ill.2d 274.

It is readily apparent that the transportation of household goods and used office furniture and equipment is a unique type of service. There is not a balanced flow of shipments nor any certainty of repeat movements between definable points. Rather, the shippers who will utilize such a service are predominantly those who find it necessary or advantageous to change their residences or their places of business from time to time. There are very few such prospective shippers who can predict when or where they will move and the difficulty of presenting an abundance of evidence to show a present and a future need for this type of service is obvious.

The record shows that there are other common carriers in Springfield who have authority to provide the same or similar services proposed by applicant; that on some occasions these carriers have turned away business during the busy season; that on several occasions other carriers have requested applicant's help in making intrastate moves; that some of the carriers require notice of about a week to ten days before accepting a move; that in one year a carrier was not able to satisfy approximately ten moves which that carrier classified as emergency moves; and that applicant's service has been utilized in the past by shippers who were satisfied with the service. We cannot say that the findings of need for the service proposed by the applicant and that the public convenience and necessity require granting of

operating authority to the applicant are contrary to the manifest weight of the evidence.

Although applicant had, in the past, operated in violation of the Motor Carrier of Property Act, there is nothing else in the record to indicate unfitness. The president of applicant had been employed and solicited for employment by other carriers in management capacities. Furthermore, applicant is a member in good standing of the Illinois Movers and Warehousemen's Association, of which plaintiffs are also members. While we do not condone or approve of applicant's unauthorized operations in the past, the record supports the finding of fitness of applicant to provide the proposed services.

The judgment of the circuit court of Sangamon County, affirming the Commission's order on rehearing, is affirmed.

*Judgment affirmed.*