CARLSON TRANSPORT, INC., Plaintiff-Appellee, v. ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.

Second District  No. 79-468

Opinion filed February 20, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Hercules F. Bolos, Special Assistant Attorney General, and Ronald L. Drozdzik, Assistant Attorney General, of counsel), for appellant.

Paul J. Maton and Mark L. Goldstein, both of Meyer & Maton, of Chicago, and Roy J. Solfisburg, Jr., of Aurora, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

The Illinois Commerce Commission appeals from the order of the circuit court of Kane County reversing an order of the Commission and remanding it for modification. On appeal, the Commission contends that the trial court erred in holding that the Commission's order, and, specifically, its finding (9), were against the manifest weight of the evidence.

On April 26, 1974, Edwin Meiers, d/b/a Graphic Arts Express, applied to the Commission for extension of its operating authority, pursuant to section 18—302 of the Illinois Motor Carrier of Property Law. (Ill. Rev. Stat. 1979, ch. 95½, par. 18—302.) Leave to intervene was granted to, and the application opposed by, appellee Carlson Transport, Inc. (Carlson), as well as A&B Freight Line, Inc., and Dixon Rapid Transport, Inc., all holding Illinois authority as common carrier, and operating in or near Oregon, Illinois.

Following Commission hearings, and by its order of December 11, 1974, Meiers was granted an extension which, in pertinent part, authorized Meiers to transport the following, pursuant to bilateral written contracts with the Acme Resin Company: (1) foundry core from Forest Park, Illinois, to Oregon, Illinois, and (2) bags and containers of sand foundry core from Oregon to points within a 150-mile radius of Oregon. The order was based, in part, on the Commission's finding (9) that:

> " * * * testimony of the Manager of Sales and Traffic for Progressive Graphics Inc., and the Traffic Manager of Acme Resin Company, shows that available common carrier service is not satisfactory and that a grant of authority is consistent with the public interest and will tend to promote safe, adequate, economical and efficient service by motor carrier and will not divert traffic now handled by carrier in the area * * *."

Following the Commission's denial of Carlson's petition for rehearing, Carlson appealed to the circuit court, pursuant to section 68 of "An Act concerning public utilities" (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 72). By its order of July 9, 1979, the trial court remanded the permit order to the Commission for deletion from the permit of all authority to transport foundry core and sand foundry core on the basis that the Commission's

order and finding (9) was contrary to the manifest weight of the evidence. ■■ The authority to review, and the scope of review, of Illinois Commerce Commission orders is found in section 68 of the public utilities act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 72). The findings and conclusions of the Commission are held to be *prima facie* true and will not be set aside unless they are against the manifest weight of the evidence. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 72; *Monarch Gas Co. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 892, 894, 366 N.E.2d 945; *McMann v. Illinois Commerce Com.* (1967), 38 Ill. 2d 126, 130, 230 N.E.2d 197; *Illinois Central Ry. Co. v. Franklin County* (1944), 387 Ill. 301, 319, 56 N.E.2d 775; *Wabash, Chester & Western R.R. Co. v. The Commerce Com.* (1923), 309 Ill. 412, 417, 141 N.E. 212), and the burden of proof is on the party appealing the Commission's orders. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 72.) The scope of review is limited to a determination of whether the Commission acted within the scope of its authority, whether it made findings in support of its decision, whether the findings have substantial support in the record, and whether a constitutional right has been infringed by such findings. *Monarch Gas Co.* (1977), 51 Ill. App. 3d 892, 894, 366 N.E.2d 945; *Wabash, Chester & Western R.R. Co.* (1923), 309 Ill. 412, 417, 141 N.E. 212.

The applicant here, pursuant to section 18—302 of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1979, ch. 95½, par. 18—302), sought an extention of its authority as a contract carrier to transport under contracts with Acme Resin certain materials as stated above. This section provides, *inter alia*, that the Commission shall issue a permit to a qualified applicant:

"* * * [I]f it is found that the applicant is fit, willing and able properly to perform the service proposed and to conform to the provisions of this Chapter, and the requirements, rules and regulations of the Commission thereunder and that the proposed service, to the extent authorized by the permit, will in the judgment of the Commission be consistent with the public interest; otherwise such application shall be denied * * *." Ill. Rev. Stat. 1979, ch. 95½, par. 18—302.

Under the statute two findings are necessary before a permit may issue: (1) that the applicant is fit, willing and able to perform the service proposed and (2) will in the judgment of the Commission be consistent with the public interest. The Commission argues on appeal that the record supports its findings of fact. Carlson contends that the trial court's judgment was correct, and that the Commission's finding (9) is against the manifest weight of the evidence in its conclusion that: (1) available service

is not satisfactory; (2) a grant of authority is consistent with the public interest; and (3) that extension of authority would not divert traffic now handled by shippers in the area.

■■ While no Illinois Court has had to interpret the term "consistent with the public interest" as utilized in section 18—302, other States accord that term a broad interpretation. Thus, a contract carrier permit has been held to be "in the public interest" or "consistent with the public interest" if: it is not detrimental to the public (*Alabama Public Service Com. v. Nunis* (1949), 252 Ala. 30, 39 So. 2d 409); not contrary to the public policy of the State as set forth in the Motor Carrier Act. (*Samardick of Grand Island-Hastings v. B.D.C. Corp.* (1968), 183 Neb. 229, 159 N.W.2d 310.) In comparison, when a transfer of a permit is sought under section 18—309 of the Motor Carrier of Property Law (Ill. Rev. Stat. 1979, ch. 95½, par. 18—309), there must be a similar showing that it will be "consistent with the public interest." It has been held that such proof regarding a permit transfer, contrasted with the requirement under section 18—301 (Ill. Rev. Stat. 1979, ch. 95½, par. 18—301) for issuance of an initial certificate to operate requiring a showing of "public convenience and necessity," is less than that in the latter situation. (*Be-Mac Transport Co. v. Illinois Commerce Com.* (1967), 38 Ill. 2d 154, 230 N.E.2d 216.) Similarly, we believe the extension of a contract carrier's service would not require the same degree of proof as in cases under section 18—301 for issuance of initial certificate. The existence of other carriers with authority to haul the same commodities in the same area is less critical in granting contract carrier authority in view of the more personal contractual, working relationship between shipper and contract carrier than in common carrier authority, which is to the public at large. The Commission gives considerable weight to the desire of a shipper to have a particular carrier haul for him under a contract. (Gleason, *Practice and Procedure before Motor Carrier Division*, 66 Ill. Bar J. 92 (1977).) Therefore, as the determination of what constitutes a "public convenience and necessity" has been generally held to be within the discretionary powers of the Commission (*New Landing Utility, Inc. v. Illinois Commerce Com.* (1977), 58 Ill. App. 3d 868, 374 N.E.2d 6), the expertise of the Commission in deciding what is "consistent with the public interest" in petitions pursuant to section 18—302 must not be set aside unless it is clearly against the manifest weight of the evidence (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 72), particularly in view of the applicant's lesser burden. See *Be-Mac*, at 160.

Carlson's reliance on Interstate Commerce Commission decisions and certain Illinois cases holding that a finding of inadequate or deficient service must be found by the Commission are inapposite. First, they involve common carrier certificates of "public convenience and necessity," which standard is more rigid than "consistent with the public

interest." (*Be-Mac Transport Co. v. Illinois Commerce Com.*) Second, even as to a common carrier certificate of "public convenience and necessity," a finding of inadequate or deficient service is not required for granting of specialized authority over irregular routes. *McMann v. Illinois Commerce Com.* (1967), 38 Ill. 2d 126, 230 N.E.2d 197.

We, therefore, examine the record to determine if the Commission's order finding that issuance of the permit was "consistent with the public interest" is clearly against the manifest weight of the evidence. At the Commission hearings, Edwin Meiers, applicant, testified that his principal place of business is Oregon, that he has one trailer capable of hauling bagged sand foundry core for Acme Resin, and that he has ordered additional equipment for that use. James Call, traffic manager for Acme Resin, testified to the following: Acme Resin has a Chicago plant in which sand foundry core is manufactured and has recently completed a plant in Oregon, which also manufactures sand foundry core, and which was designed to serve a potential new volume of business. Ultimately, the Oregon plant will be operational around the clock, and have a monthly output of 10 million pounds of sand foundry core. Three to four loads per day will be shipped to customers within a 150-mile radius of Oregon. Foundry core, the material from which sand foundry core is manufactured, is made in Acme Resin's Forest Park Plant and shipped to Oregon. Because foundries do not retain a large inventory of sand foundry core, manufacture and shipment of the product must be accomplished on short notice. Meier's service is essential to the Acme Resin Oregon plant because Meiers is located in Oregon, and because Meiers is a contract carrier. Acme Resin needs a carrier "who is on the spot" to haul on short notice, and, in that vein, a contract carrier gives the best service and fills a need that a commercial carrier cannot. The Oregon plant will still use other carriers, and Carlson, which currently serves Acme Resin, will be needed for bulk movement of sand foundry core and shipment of containers of the product outside the 150-mile radius.

The representative of Dixon Rapid Transport testified that Call indicated Dixon's services would be used if Dixon obtained a special commodities rate, and that Dixon applied to the Tariff Bureau for these rates. The request was not approved at the time of the hearing, but, once approved, will allow Dixon to serve Acme Resin on a "call and demand" basis. The representative of Carlson testified that Carlson has been transporting sand for Acme Resin for several years without complaints and has dedicated equipment of Acme Resin's needs. Carlson purchased equipment in anticipation of Acme Resin's increased needs, and will buy anything needed to serve Acme Resin. Generally, however, Carlson's equipment is "very seldom" not fully utilized. The representative of A&B Freight testified that A&B has hauled sand products for another Oregon

company, but acknowledged that the A&B terminal is open only five days per week.

■■■ From a review of the foregoing evidence, we cannot conclude that it clearly appears finding (9) is against the manifest weight of the evidence in the three particulars above cited by appellee. Call's testimony affirmatively indicates that common carrier service is not satisfactory for Acme Resin's projected short-notice needs, and the Commission is entitled to consider future needs. (*Campbell v. Illinois Commerce Com.* (1929), 334 Ill. 293, 165 N.E. 790.) From Call's testimony, the Commission could properly conclude that Acme Resin requires a contract carrier, which, by definition, must assign equipment to its exclusive use, or otherwise meet its distinct needs. (Ill. Rev. Stat. 1979, ch. 95½, par. 18—100(10).) Evidence adduced by the intervenors certainly did not show that available common carrier service is now satisfactory for all of Acme Resin's increased needs. The Commission's finding that extension of Meier's authority will not divert traffic from other carriers, is supported by evidence that the new Oregon plant is intended to handle a new volume of business with short order delivery. Therefore, we find there is sufficient evidence in the record to support the Commission's order and that its findings were not against the manifest weight of the evidence.

■■ Carlson also challenges the adequacy of finding (9) to support the Commission's order, on grounds that it contains only findings of ultimate fact. While the Commission argues that this point was waived by appellee's failure to raise it in his petition for rehearing, our disposition of this issue on its merits renders treatment of the arguably meritorious waiver issue pointless. The Commission's findings must be sufficiently specific to enable intelligent review as to whether the facts found afford a basis for the order entered. (*Brinker Trucking Company v. Illinois Commerce Com.* (1960), 19 Ill. 2d 354, 357, 166 N.E.2d 18; *Knox Motor Service, Inc. v. Illinois Commerce Com.* (1979), 77 Ill. App. 3d 590, 396 N.E.2d 280.) If the findings are not sufficiently specific, the court will not enter into an independent investigation of the record to develop new facts to support the order, and remandment to the Commission for further proceedings is proper. (*Brinker Trucking Co. v. Illinois Commerce Com.*) Finding (9) contained a specific finding that existing common carrier service is not satisfactory, an adoption of the testimony of the applicant and the Acme Resin traffic manager and a finding that traffic of current carriers will not be diverted by extension of the permit. The latter findings are not conclusions of ultimate fact and it is clear that they are intended to support the conclusion that the permit extension is "consistent with the public interest." Also, appellee has singled out one paragraph of the Commission's finding whereas the order consists of four pages and its entire findings must be read together. Taken as a whole, for finding (9) standing

by itself, the order does meet the specificity required. For these reasons, finding (9) differs from findings held to be inadequate in two cases relied on by appellee. In *Brinker Trucking Co. v. Illinois Commerce Com.* (1960), 19 Ill. 2d 354, 166 N.E.2d 18, the finding involved merely stated that "sufficient evidence * * * was presented to establish proof for the need of the proposed service and the proposed service is consistent with public interest." In *Kewanee & Galva Ry. Co. v. Illinois Commerce Com. ex rel. Dohrn Transfer Co.* (1930), 340 Ill. 266, 172 N.E. 706, the finding challenged was wholly conclusory without any specific findings. In contrast, the Commission's finding (9) makes clear what testimony it relied on in its conclusions as to relevant facts, and what relevant facts it relied on in its determination of "public interest."

Having concluded that finding (9) is adequate to support the order, and that it is not against the manifest weight of the evidence, we reverse the judgment of the circuit court, and order that the Commission's order of December 11, 1974, be reinstated in full.

Judgment reversed, commission order confirmed.

UNVERZAGT and LINDBERG, JJ., concur.